LANGEN, Respondent, *v.* BADLANDS COOPERATIVE
STATE GRAZING DIST., Appellant.
No. 9054.
Submitted April 25, 1951. Decided July 31, 1951.
234 Pac. (2d) 467.

Mr. Thomas Dignan, Jr., Glasgow, for appellant.
Mr. John Marriott Kline, Glasgow, for respondent.
Mr. P. F. Leonard, Miles City, amicus curiae.
Mr. Dignan and Mr. Kline argued orally.

MR. JUSTICE BOTTOMLY:

This is an appeal from a judgment in favor of B. P. Langen and against the Badland Cooperative State Grazing District, a corporation.

*The Facts.* June 30, 1946, B. P. Langen made written application to the board of directors of the Badland Cooperative State Grazing District for what he claimed was his permanent preferred rights to about 840 animal units which he claimed he had under the association. He also applied for a temporary grazing permit for the 1946-47 grazing period. After hearing, the board of directors of the district disallowed both applications, thereafter notifying Langen of its action. September 23, 1946, Langen submitted an amended application to the district and an appeal to the Montana Grass Conservation Commission; the application was denied by the board of directors of the district and Langen notified of said action.

The Montana Grass Conservation Commission heard the appeal November 19, 1946, and thereafter rendered and filed its findings, conclusions and decision, wherein it affirmed the action and decision of the district in disallowing Langen's applications, but without prejudice to Langen to make timely application for 1947 temporary grazing permit.

April 21, 1947, Langen appealed to the district court from the decision of the commission. The court after reviewing the testimony taken before the commission and some book entries

of the district reversed the decision of the commission and entered the following decree:

."It is hereby ordered, adjudged and decreed: That appellant has class 1 preferred rights of 412 animal units in Badlands Cooperative State Grazing District, which the Board of Directors of said district shall recognize at once.

"It is further ordered, adjudged and decreed: That appellant have judgment against the respondent for his costs and disbursements here taxed and allowed in the sum of $85.00.

"Dated September 21st, 1950."

Under Chapter 66, Laws of 1933, the legislature authorized the formation of "Cooperative Grazing Association." Under the terms of this Act in 1934 an association was organized designated the "Bad-Land Cooperative Association." Chapter 66, Laws of 1933, was amended by Chapters 194 and 195, Laws of 1935. Under the provisions of the 1935 Acts, all associations which had been incorporated under Chapter 66, supra, were given 30 days after the approval of said Acts to incorporate under the 1935 Acts, and such incorporated entities were required to be designated" ————— Cooperative Grazing Associations." The Bad-Land Cooperative Grazing Association conformed to the 1935 Acts. Langen was a member of said association from 1936 until he left the association in 1938, because, as he testified, the range was a little over-grazed and he had the opportunity to lease a unit on the Fort Peck Indian Reservation which he obtained, consisting of 12,000 to 13,000 acres. At the time Langen left the Bad-Land Grazing Association, there was a charge against him of $9.72 for non-use in 1938, which he has consistently refused to pay.

Apparently in 1939 (the record is not definite) Langen made application for permanent preference rights in the Buggy Creek State Grazing District and to substantiate his application and right, submitted in his application his dependent commensurate property known as the Lewis-Wedum and the Downing ranches. The Buggy Creek District granted Langen such preference

rights and he is still a member of said district and exercising his preference in that district.

The legislature, after trying the law as provided by the 1933 and the 1935 Acts, and with the years of experience, repealed the foregoing Acts, together with all Acts or parts of Acts relating to state grazing districts, and wrote a completely new Act, to be cited as the "Grass Conservation Act," Chapter 208, Laws of 1939, which became effective March 17, 1939. This Act was amended by Chapter 199, Laws of 1945; such amendments are not pertinent to this inquiry. Such Act is now incorporated in Chapter 23, R. C. M. 1947, secs. 46-2301 to 46-2332, both inclusive.

Under the provisions of the Montana Grass Conservation Act, all grazing associations which had been formed under the 1933 or the 1935 Acts were granted six months to reincorporate under the provisions of Chapter 208, supra, and to conform with the provisions thereof. The Bad Land Cooperative Grazing Association reincorporated on August 15, 1939, in conformity with the requirements of Chapter 208, incorporating as the Badland Cooperative State Grazing District and thereby became an entirely new and distinct corporation, under the mandatory provisions of Chapter 208, supra.

Chapter 208, supra, exacted two requirements of each prospective member. Section 21 thereof [now R. C. M. 1947, section 46-2321] provided so far as pertinent here that: "*Any person* entitled to grazing preferences within any state grazing district based on dependent commensurate property or commensurate property *must make application one year after the passage of this act to qualify for said preference * * *.*" (Emphasis supplied.) This section prescribed the time limit for making application. See, State ex rel Engle v. District Court, 119 Mont. 319, 323, 174 Pac. (2d) 582, 584.

R. C. M. 1947, section 46-2320, provides so far as pertinent here that: "When a state district is organized, grazing preferences shall be distributed in the following manner: *Any member* of a state district owning or controlling dependent commen-

surate property as heretofore defined *may* be given a grazing preference. *If the carrying capacity of the range exceeds the reasonable needs of members owning or controlling dependent commensurate property,* members owning or controlling commensurate property shall have the preference. * * *''

R. C. M. 1947, section 46-2322, provides that: ''Grazing preferences shall run with and be appurtenant to, the dependent commensurate property upon which they are based.''

The question here presented is: Was the action of the board of directors of the district confirmed by the grass conservation commission correct in determining that Langen had no preferred rights in the district or the court's decree granting Langen 412 animal unit rights in the district?

In examining the testimony submitted, we find that Langen testified that he made a verbal application to the Badland Cooperative State Grazing District in 1941, at the time his first reservation permit expired. If Langen made such application, whatever the action of the district thereon, he took no further action therein.

The secretary of the district, Neil D. Campbell, testified that he had been such secretary since April 12, 1940; that he has kept the records of the district since he assumed the office, and said records are in his own handwriting; that he had no recollection of Langen ever making a verbal application to him; that to the best of his memory the first time Langen made an application for rights in the district was a verbal application Langen made to the board in person in the winter of 1944 at the time when allotments were being made. The board denied Langen's claim for preferred rights, and he took no appeal therefrom.

However, granting Langen made application in 1941 as he testified, such application would not bring him within the mandatory provisions of section 46-2321, supra, the effective date of Chapter 208, supra, being March 17, 1939, and to be within the time limit of the Act an application made after March 17, 1940, would be too late. It should be kept in mind that Langen's

appeal to the district court is from the adverse ruling of the commission on his application made in 1946.

The testimony and record further show and the commission determined Langen offered the Lewis-Wedum ranch as dependent commensurate property on his application to the Badland District. However, prior to his application to the Badland District, Langen had applied for and received his preference rights in the Buggy Creek District, using his Lewis-Wedum ranch as dependent commensurate property, thereby affixing such grazing preference in the Buggy Creek District and appurtenant to said dependent commensurate property. R. C. M. 1947, section 46-2322. The commission determined that sufficient range is furnished by the Buggy Creek District to satisfy Langen's preference.

It should be pointed out that the Grass Conservation Act establishes a broad state policy, evolved by the legislature after years of study and consideration, enacted for the purpose of providing for the conservation, protection, restoration, and proper utilization of one of the state's most important products, the grass, forage and range resources, not only of federal lands, but of state, county and private lands, and for the better stabilization of the livestock industry and thereby the communities, the counties in which districts are located, and the state at large. The men administering this Act are specialists in their respective fields.

The organization of such cooperative corporations is officered and managed at the grass roots level, by the people themselves who understand and who are engaged in the industry. The Act provides for a State Grass Conservation Commission, composed of those same people who are especially interested in and especially trained in the conservation of this resource, to supervise, direct, counsel and to require the carrying out of the purposes and policy of the Act by the boards of directors of the districts. Also to see that the proper cooperation is maintained with the federal agencies concerned, the state, the counties and the individuals, this commission is given broad powers of fact finding

and determination of all controversies arising between the different parties, agencies and instrumentalities concerned. The legislature has bestowed upon the commission the appellate power and authority to determine such controversies and their decisions shall be conclusive, except that an aggrieved party may appeal to the district court by filing notice of appeal within 30 days after decision is rendered. R. C. M. 1947, section 46-2308.

The review by the district court is only for the purpose of determining the legal rights of the parties involved. This is so because of the division of governmental powers under the Constitution, neither the district court nor the Supreme Court may substitute their discretion for the discretion reposed in boards and commissions by the legislative acts. Freeman v. Board of Adjustment, 97 Mont. 342, 357, 34 Pac. (2d) 534. And see, Fulmer v. Board of Railroad Com'rs, 96 Mont. 22, 28 Pac. (2d) 849; State ex rel. Goza v. District Court of Flathead County, Mont., 234 Pac. (2d) 463.

A statute which attempts to "place the court in the place of a commission or board to try a matter anew as an administrative body is unconstitutional as a delegation to the judiciary of non-judicial powers." Peterson v. Livestock Commission, 120 Mont. 140, 181 Pac. (2d) 152, 157.

The appeal from the commission to the district court is for the purpose merely of determining whether upon the evidence and the law the action of the commission is based upon an error of law, or is wholly unsupported by the evidence, or clearly arbitrary or capricious. On such review courts will only inquire insofar as to ascertain if the board or commission has stayed within the statutory bounds and has not acted arbitrarily, capriciously or unlawfully. Compare: Ma-King Products Co. v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046; St. Joseph Stock Yards Co. v. United States, 298 U. S. 38, 51, 56 S. Ct. 720, 80 L. Ed. 1033; Yarbrough v. Montoya, 54 N. M. 91, 214 Pac. (2d) 769, 773; Burton-Shields Co. v. Steele, 119 Ind. App. 216, 83 N. E. (2d) 623, 626, on rehearing, 85 N. E. (2d) 263;

1 Vom Baur, Federal Administrative Law, section 44; State ex rel. Goza v. District Court, supra.

Where the question involved is within the jurisdiction of an administrative tribunal which demands the exercise of sound administrative discretion, requiring the special knowledge, experience and services of trained officers to determine technical and intricate matters of fact, and where a uniformity of ruling is essential to comply with the state's policy and the purposes of the regulatory statute on review by the court of such decisions by such authorities, the courts will inquire only so far as to see whether or not the action complained of is within the statute and not arbitrary or capricious.

We do not find in the record that Langen ever testified that ▮▮ he had class 1 rights or that he ever had class 1 preference for 412 animal units in the Badland Cooperative State Grazing District. There is no evidence whatever that Langen ever made application for grazing rights or permit or non-use permit within the statutory time limit, i. e., one year from March 17, 1939, the effective date of Chapter 208, supra. There is no evidence whatever that Langen was ever a member of the Badland Cooperative State Grazing District. See: State ex rel. Engle v. District Court, supra.

This Act, as the previous grazing association Acts, was of special interest to stockmen, their industry and their business. The 1939 Act and the amendments thereto like the previous Acts affected their interest; it was incumbent upon Langen as well as all similarly situated who would be or might be affected, to take an interest in, and be alert to, the changing law, so as to guard and protect any rights they may have had.

This Langen failed to do. The burden was on him to know ▮▮ the law and take such action at the proper time as would protect any rights he might have. Compare: Harrison v. Cannon, 122 Mont. 318, 203 Pac. (2d) 978.

Respondent has contended strenuously that he had rights in the Badland Cooperative State Grazing District which the district and the commission took from him without notice, contrary

to due process of law. His contention would no doubt have merit if the evidence disclosed that he has such rights. There being no evidence that he ever made application within time, he could not have been a member, had no rights, and was not entitled to any notice other than the statute.

The judgment is reversed and the proceedings ordered dismissed.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES METCALF, FREEBOURN and ANGSTMAN, concur.