DON BURKE, APPELLANT, v. SOUTH PHILLIPS COUNTY CO-OPERATIVE STATE GRAZING DISTRICT, RESPONDENT.

No. 9773.

Decided March 16, 1959. Rehearing Denied June 1, 1959.

339 Pac. (2d) 491.

MR. JUSTICES BOTTOMLY and ADAIR, dissented.

Leif Erickson, Helena, for appellant.
Leif Erickson argued orally.
Thomas Dignan, Jr., Glasgow, for respondent.
Thomas Dignan, Jr., argued orally.

MR. JUSTICE CASTLES:

This appeal is taken from a district court order dismissing an appeal to that court from a decision of the Montana Grass Conservation Commission. The appeal to the district court was

submitted on the record made at the hearing before the Commission.

The respondent is the South Phillips County Cooperative State Grazing District, an incorporated state grazing district under section 46-2301 et seq., R.C.M. 1947, and will be referred to as the "District." The status under our statutes of such districts was discussed by this court in Langen v. Badlands Co-op. State Grazing District, 125 Mont. 302, 234 Pac. (2d) 467, and need not be repeated here. See also R.C.M. 1947, sections 46-2301, 46-2307; 43 C.F.R. The district here involved administers federally owned land through cooperative agreement with the Department of Interior.

The appellant, Don Burke, is a member of the District and a grazing permittee, due to his purchase in May 1950, of a portion of ranch locally known as the Carnahan ranch. Originally the Carnahan ranch was a large spread with grazing rights for 320 animal units, but prior to Burke's purchase, part of the ranch had been sold and the portion sold was determined to have 223 animal units. Burke claims that the difference between 320 and 223, i. e., 97, is the number of animal units to which he is entitled and that the District and Commission have deprived him of a part of these rights.

The following sketch of $17\frac{1}{4}$ square miles will give a graphic picture of the land involved. The area shown as Area "A" consisting of 320 acres was the base property of the Carnahan ranch when purchased by Burke in May of 1950. Section 36, immediately to the north of Area "A" is state land leased by the Carnahan ranch, and found to be controlled sufficiently to be commensurate property. R.C.M. 1947, section 46-2320. Areas "B" and "C" are county range lands purchased by Burke subsequent to 1950. Area "B" of this county range land was fenced by Burke and broken up for cultivation. The balance of the sketched lands are range lands controlled by the District and included in the boundary of Burke's allotment.

Area "A" — Base property

Area "B" — Purchased from County self furnished range-cultivated

Area "C" — Purchased from County self furnished range

Prior to Burke's purchase of his portion of the Carnahan ranch, although he denied it, the record confirms that Burke inquired of certain officers of the District as to what preference rights went with the portion of the Carnahan ranch he was about to purchase. He was informed that a survey would have to be made to determine what rights would go with his base commensurate property. In April of 1950, which would be at about the time Burke was negotiating for the property, one Glenn Mueller, a Forest Service official, made this range survey and as a result the Carnahan ranch preference right was established at 14 animal units.

The 14 animal unit preference was later raised to 43 when it was discovered that section 36, the state land lease, could be considered as controlled by Burke and as commensurate base property. The record is quite clear that Burke knew before his purchase of the Carnahan ranch of this situation, either as to the exact number of preference rights or at the very least that they were established at a number less than the arithmetic 97 head balance he now claims. There is evidence that the Carnahan ranch had deteriorated prior to 1950 so a reduction in preference rights would be proper. Section 161.6, subd. (e) (7), 43 C.F.R. (Federal Range Code).

Also the record reveals that Burke was granted permits, preference plus temporary for a total of 100 head in 1950, 100 head in 1951, 100 head in 1952, and 70 head in 1953. During this time his preference rights were established at 43 head. Burke was apparently satisfied with the arrangement when he made his purchase and afterward he entered into a written fencing agreement based on a 43 animal unit preference but later refused to go through with it.

Finally, on November 22, 1953, Burke applied to the District for his 1954 grazing permit. He applied to graze 125 head. On March 8, 1954, the District granted to Burke a permit for 92 animal units, 43 Class One preference and 49 temporary. On April 15, 1954, the District set the boundaries of Burke's allotment of range land. On April 27, 1954, Burke filed his notice of appeal to the State Grass Conservation Commission.

In the notice of appeal, appellant stated as grounds for the appeal that he owned and controlled commensurate property; that the carrying capacity of the range exceeded the reasonable needs of the members owning or controlling dependent commensurate property; that his predecessors in interest had used the range applied for in each of the five years immediately preceding June 28, 1934, and that he is entitled to issuance to himself of grazing permits in preference to others in the district who did not qualify by ownership of commensurate property and by prior use in the five years immediately prior to

June 28, 1934; that he was deprived by the action of the District of the full use and benefit of his permanent preference rights; that the District's action in establishing boundaries of his grazing allotment deprived him of the benefit of a stockwater resorvoir for which he had helped pay; and that the range allotted him was insufficient.

On the appeal above noted, a hearing was held before the Grass Conservation Commission. The Commission made findings of fact and conclusions and rendered its decision. It found that other users in the vicinity, Harris, Humenik and Orohood, were the possessors of dependent commensurate property; that the District properly deducted the carrying capacity of appellant's privately controlled self-furnished range from his preference demand in the district range; and that the District acted properly in establishing Burke's preference rating at 43 animal units. The action of the District was confirmed and the appeal dismissed.

Burke then appealed to the district court. The matter was submitted to the district court on the record made before the Commission. The district court affirmed the Commission's decision and dismissed the appeal. It is from that order that this appeal is taken.

The appellant urges seven specifications of error which can be set forth in two questions:

1. Did the District act within the law when it established the appellant's preference grazing rights at 43 animal units?

2. Did the District properly classify lands (Area ''B'' on the map) as self-furnished grazing land even though cultivated and not used as grazing lands?

Throughout his brief, appellant argues that he had an established preference rating of 97 animal units which were appurtenant to the property which he bought. This assumption the appellant arrived at as follows: The main part of the old Carnahan ranch was sold prior to the appellant's purchase of the remainder to the Town Brothers. Minutes of the District on May 22, 1950, reveal that Town Brothers were de-

cided upon as having 223 animal units. This figure deducted from 320 units originally allotted to Carnahan in 1944, left the alleged 97 units on the Burke purchase. However, as the District man testified, this was not considered as being 97 units of preference rights appurtenant to the land at that time. As of November 29, 1944, it would have been, but the record is replete with testimony that the base property had deteriorated.

Testimony indicates that Mrs. Carnahan came to the District with her real estate agent to inquire what preference rights went with the land she was selling. They were informed that a new survey would be made. Such was done on April 26, 1950, and as said before the appellant Burke had knowledge of his rights to 43 animal units from prior to his purchase. Thus, we believe the District was acting within its discretion when it established a preference right of 43 units. At that time it was not reducing an appurtenant preference right of 97 units.

If such a preference right of 97 units were appurtenant to the Burke property at the time of his purchase, he has failed to carry the burden of proof required of him. Mrs. Carnahan, his predecessor in interest, apparently did not claim 97 units as being appurtenant to her property. As a matter of fact, the record does not show that she had any stock under permit at the time of Burke's purchase. Burke's position is that he has his predecessor's rights, but he has failed to show what those rights were by a preponderance of the evidence or by any evidence.

The Federal Range Code, section 161.6, subd. (e) (7), 43 C.F.R., provides:

"If a licensee or permittee ceases to make substantial use of his base property in connection with his year-round livestock operation, the authorized use under such license or permit will be subject to reduction in proportion to the diminished use of the base property."

From what we have heretofore stated, with regard to the deterioration of the ranch, it is obvious that this provision of

the Range Code is applicable. Appellant Burke argues that R.C.M. 1947, section 46-2322, makes provision that grazing preferences shall run with and be appurtenant to the dependent commensurate property upon which they are based and, that to make any reduction, certain requirements under that section as to notice and hearing proceedings must be followed. Certainly there can be no argument with the law he cites, except that it does not apply under the facts disclosed by this record.

Burke bought the ranch knowing it rated only 43 animal units so what he bought was never reduced.

As related before we have no showing of the continuous use or nonuse under permits of the appellant's predecessor in interest. We have no sufficient showing made that any preference rights were appurtenant to the land in April or May of 1950. No deeds, assignments of leases, assignments of grazing rights, contracts, prior permits or other documents were offered to establish any preference rights. The only evidence was that previously referred to in the minutes of April 22, 1950, which alluded to the Carnahan property previously sold. Other evidence indicates that Burke's predecessor in interest came to the District in person to inquire in an attempt to re-establish preference rights as previously related.

We have held in Langen v. Grazing District, supra, that the burden is on the stockgrazer to know the law and take such action at the proper time as would protect any rights he might have. In that case, we also held that on review the courts will only inquire insofar as to ascertain if the Board or Commission has stayed within statutory bounds and has not acted arbitrarily, capriciously, or unlawfully.

We find that the District did not act arbitrarily, capriciously or unlawfully.

The second question presented, whether the District properly classified lands as self-furnished grazing land even though cultivated and not used for grazing will now be considered. This question is involved because of the resurveys of Burke's land

for commensurability in 1953. It is appellant's position that he has increased his commensurate rating by the addition of new base property and improvement of the old base property. He also contends that he is entitled to preference as to grazing rights on the range over three other users, Harris, Humenik, and Orohood.

First, to dispose of the latter contention, the record is barren ▊ of any testimony that Harris, Humenik and Orohood were not possessors of dependent commensurate property in the District. They had to have such property to be granted grazing rights and as the Commission had available to it, the records of the District, and so found, these three ranchers must have qualified. We will not presume a failure of duty by a public commission. R.C.M. 1947, section 93-1301-7, subds. 15, 33.

The appellant limits his argument to the particular range involved. The record does not show that the appellant does not have sufficient range. As a matter of fact it shows that the District has treated him quite generously. He has enjoyed a higher proportion of temporary use than the others running in common with him; Harris being permitted grazing privileges of 115 percent of his preference; Humenik 122 percent, Orohood 150 percent and appellant Burke 214 percent of his recognized preference.

On the sketch previously set out, Areas "B" and "C" were summer range county lands leased for grazing purposes. Burke subsequently bought them. He still uses Area "C" for grazing, but has fenced and cultivated Area "B" to some extent not fully shown in the record. He claims that this area should be considered as base property.

As to the self-furnished range the Commission concluded:

"That this action of the respondent district in deducting the carrying capacity of his privately controlled self-furnished range from appellant's preference demand on district range is entirely consistent with existing policies which may be found on page 43 of the Handbook for the Operating of State Grazing Districts, 1953, as a part of paragraph IV of the Basic Policies

Agreement of 1944, as follows: 'Allocations of land and grazing privileges in State Grazing Districts will be made in accordance with preference demand of the members on District ranges available, but *members privately owned or controlled summer ranges will be deducted from such members preference demand on the District range'.*" Emphasis supplied.

This same policy was testified to at the hearing. The appellant cites us to no testimony, policy or law to the contrary. We said in the Langen case, supra, 125 Mont. at page 309, 234 Pac. (2d) at page 471:

"Where the question involved is within the jurisdiction of an administrative tribunal which demands the exercise of sound administrative discretion, requiring the special knowledge, experience and services of trained officers to determine technical and intricate matters of fact, and where a uniformity of ruling is essential to comply with the state's policy and the purposes of the regulatory statute on review by the court of such decisions by such authorities, the courts will inquire only so far as to see whether or not the action complained of is within the statute and not arbitrary or capricious."

The testimony of Mueller of the Forest Service probably best describes the self-furnished range policy and shows that it is not arbitrary or capricious, and that the District was following established practice and policy.

Mueller testifying:

"Well, the way we have interpreted it on this Carnahan place, in fact we do it on all places, the county land that's previously testified to, was leased to Mrs. Carnahan, a private lease. However, it was part of the entire picture of the Carnahan ranch and we have always considered it as what we call self-furnished summer range.

"Now, the self-furnished summer range, in all state districts * * * is to be deducted from class I preference demand. * * * That's a common practice that we have made. A man may buy a piece of county land. Of course, it's his deeded land he can do with it as he sees fit. However, it is

still, as far as the records are concerned, summer grass. He may plow it entirely up, but we still detract the carrying capacity as it was on the land from summer range."

The appellant contends that he is entitled to more animal ██ unit preference rights because he improved his base property. First he has failed to show available range and second he has failed to show actual improvement results. The witness Mueller testified that at the time of the hearing the results were not sufficient to increase his rights. Thus the Commission had sufficient testimony on which to base its findings, and we will not interfere so long as it has not acted arbitrarily, capriciously or unlawfully.

We find that the District and the Commission were not arbitrary or capricious. The appellant Burke knew at the time of his purchase what he was getting. He was satisfied for four years or at least took no steps to show otherwise.

The order of the district court is affirmed, the appeal dismissed.

MR. JUSTICE ANGSTMAN, and THE HONORABLE VICTOR H. FALL, District Judge (sitting in place of MR. CHIEF JUSTICE HARRISON,) concur.

MR. JUSTICE BOTTOMLY:

I dissent.

Where as here the grazing preferences and privileges had already been established, the duties of the directors of the grazing district in allocating such preference rights for the years 1950, 1951, 1952 and 1953 were simply ministerial.

Courts do not control the discretion of the district Board nor of the Commission, but we have the authority and it is our duty and responsibility to see to it, when brought to our attention, that the discretion of the Board and Commission is exercised within and in accordance with the state law.

The grazing preferences set forth in Chapter 23 of Title 46, R.C.M. 1947, are valuable rights; they shall run with and be

appurtenant to the dependent commensurate and commensurate real estate property upon which they are based. Since the rights here in question had been established and had become appurtenant to the real property of the plaintiff Burke, prior to the years 1950, 1951, 1952 and 1953, the district or the *Grass Conservation Commission may not legally reduce permanently the plaintiff Burke's established grazing rights.* It became the mandatory duty of the Board and the Commission to allot the grazing preference rights under the provisions in that regard provided in Chapter 23 of Title 46, R.C.M. 1947. See State ex rel. Engle v. District Court, 119 Mont. 319, 324, 325, 174 Pac. (2d) 582.

This court in Langen v. Badlands Co-operative State Grazing Dist., 125 Mont. 302, 234 Pac. (2d) 467, did not pass upon the pertinent question pertaining to established rights raised in this case, hence that decision has no application to the specific question raised.

Since our duty is so plain and simple, it is not my intention to dwell on this matter at any great length. In my opinion two inconsistencies are glaringly present in this record. The inconsistencies concern matters of vital importance to all stockmen having established preference rights in such districts.

The full consideration of these facts in my opinion proves the plaintiff's contention that the Board and the Grass Conservation Commission both abused their respective discretion.

The first of these is this: The Carnahan ranch at the time that the larger unit was sold to the Town Brothers had an appurtenant preference grazing right of 320 animal units. There is no evidence that that preference was ever reduced prior to such sale. On May 22, 1950, the minutes of the district reveal that the portion of the Carnahan ranch sold to the Town Brothers had 223 animal units. Burke also bought his portion of the Carnahan ranch in May of 1950. The purchases by the Town Brothers and Burke constituted purchases of the *entire* Brothers and Burke constituted purchases of the *entire* Carnahan property. Thus in *May 1950* the Town Brothers' portion carried

223 units, Burke's portion therefore carried the difference between 320 and 223, or 97 animal units.

Yet the Commission contends this is not so, that because of deterioration Burke's portion represents only 43 animal units. The Commission contends further that the reduction is necessary and proper because of deterioration of the Carnahan ranch property. At the same time however that they permanently reduced Burke's preference rights they gave the Town Brothers' portion of the Carnahan ranch its full share of preference units without any deduction at all. This determination by the Commission to reduce Burke's appurtenant valuable grazing preference rights, and not reduce the Town Brothers, was arbitrary and an abuse of discretion. If the reclassification for deterioration purposes was to be made, it was not proper nor legal to confine such reclassification to Burke's portion of the entire ranch unit and omit the Town Brothers' portion. There is no evidence in the record that *the entire* Carnahan ranch was reclassified; lacking such, the abuse of discretion is obvious.

The second irreconcilable fact, in regard to the law, was in regard to the testimony of the Forest Service employee. He was allowed to assert that because of *"common practice"* certain property was to be classified as "self-furnished range" and that therefore the owner of such property would have his preference reduced. Yet he blandly testified that the land, Burke's portion, so classified as *"summer range"* is *so classified purely from practice,* without regard to the *actual prior use of the land.* In essence, he says, when the land use is changed *we consider it a reduction from summer grass land, whether or not the land was summer grass land or not.*

The Commission in basing their findings and conclusions upon such testimony has acted without the law and in an arbitrary, capricious and unlawful manner. This court in my opinion should never affirm a determination of an administrative body *founded upon arbitrary and illegal "common practices."*

I would reverse the order of the district court and order the Grass Conservation Commission to enter an order giving the

plaintiff the 97 animal unit grazing rights appurtenant to his land and of preference to which he is entitled, on the record made in this case.

MR. JUSTICE ADAIR:

I concur in MR. JUSTICE BOTTOMLY'S foregoing dissent.

On petition for rehearing. (For former opinion see 339 Pac. (2d) 491.)

PER CURIAM.

Appellant's petition for rehearing herein is hereby denied.

MR. JUSTICE CASTLES, and THE HONORABLE VICTOR H. FALL, District Judge, concur.

MR. JUSTICE ANGSTMAN: (specially concurring).

I concur in the order denying the motion for rehearing.

The motion stresses the fact that the foregoing majority opinion is based upon the erroneous conclusion that the preference right going with the Burke property had been reduced to 43 animal units before he purchased the property. If we assume that the reduction was made after he purchased the property the result would be no different.

As is pointed out in the majority opinion, the Federal Range Code permits a reduction in the range rights when there is a cessation of substantial use of the base property.

Subdivision (4) of section 46-2312, R.C.M. 1947, gives the state District Board broad powers in effecting an increase or decrease in the size of the permits. It gives the District power "To manage and control the use of its range. This power shall include the right to determine the size of preferences and permit according to a fixed method which shall be stated in the by-laws and which shall take into consideration the rating of dependent commensurate property and the carrying capacity of the range, and may be subject to reservations, regulations, and limitations under the terms of agreements between the state

district and any agency of the United States. It shall also include the power to allot range to members or non-members, and to decrease or increase the size of permits if the range carrying capacity changes."

And nowhere in the statutes do I find any requirement that notice be given to anyone. It is true that when a permittee makes application to transfer a preference right from one property to another notice must be given. Section 46-2322. The same is true where a permittee is charged with failure to pay the grazing fee, or with a violation of any of the rules and regulations of the state district. Section 46-2322.

But no provision is made for giving notice of a hearing on the matter of reducing the rights. It was evidently the intention of the legislature to leave this matter in the hands of the districts with power to change the size of the permits from year to year depending upon the facts as they appear to the board of directors of the district.

When an interest in the Carnahan ranch was transferred to Burke, section 46-2314 became applicable. That section provides in part as follows:

"When any member shall dispose of a part of the lands or leases owned by him so that another shall become the owner of such lands or leases and acquire the right to membership, then the rights and interest involved shall be determined by the directors of the state district with the approval of the commission."

This statute made it mandatory upon a transfer of the Carnahan interest to Burke that the District determine the rights and interests involved.

The district court was warranted on the record in holding that there was no arbitrary or capricious action on the part of the District here.

MR. JUSTICE BOTTOMLY: (dissenting).

I dissented in this matter when the original opinion of this court was promulgated and in view of the fact that the peti-

tion for rehearing filed by the appellant proves that both the majority and our dissenting opinions heretofore filed were based upon an erroneous interpretation of the facts, I believe the petition for rehearing should be granted for the following reasons.

The majority opinion holds that Burke acquired only those animal units appurtenant to the portion of the Carnahan ranch bought by Burke in 1950 and holds that at that time, being April or May of 1950, far less than 97 animal units were appurtenant to the property purchased by Burke. The opinion further holds, that *Burke knew this fact and bought the ranch with that knowledge.* Based upon this determination, the majority then holds that Burke, knowing what he bought could not later complain that what he purchased was less than what he bargained to receive when purchasing part of the Carnahan ranch. The official minutes of the respondent District do not so show, but on the contrary they do show by the testimony of James L. Main that the first survey that he has any record of after the sale of the Carnahan ranch was in April of 1951.

The petition for rehearing points out that the record in this case, *based upon the minutes of the grazing district, shows that it was in 1951* and not during *1950* when an adjustment was made in the preference rights appurtenant to the Carnahan property purchased by Burke in 1950.

Further, the petition shows that contrary to what is stated in both the majority and dissenting opinions the amount of 97 animal units, appurtenant to Burke's property, was not arrived at by subtracting 223 animal units from the 320 animal units the entire Carnahan property carried, but that actually it was the other way around; that Town Brothers purchased a portion of the Carnahan property at approximately the time Burke purchased the remaining portion; that Town Brothers were seeking to determine how many of the 320 animal units of the Carnahan property went with their portion of the ranch; that at the South Phillips County Cooperative State Grazing District meeting held in May 1950, *according to the minutes of that meeting introduced in this case, it was first determined*

*that 97 animal units belonged to the property Burke was to
purchase and then these 97 animal units were subtracted from
the total of 320 animal units belonging to the entire Carnahan
ranch leaving 223 animal units appurtenant to the Town
Brothers' purchase,* which 223 animal units the Grazing Dis-
trict allotted to the Town Brothers without any modifications
or any loss in commensurability in the base property.

When these facts are considered in the light of the majority
opinion's holding that Burke was entitled only to what he bought
in 1950, *it is apparent that he bought the 97 animal units that
were determined by the Grazing District in 1950 to be appurt-
enant to his land and that 97 animal units were what he was
entitled to receive.*

It is asserted that prior to purchase a reappraisal, of the
property Burke was to purchase, was had and that the prefer-
ence on the land was reduced by this reappraisal prior to the
purchase by Burke. Even if this be so, the minutes of the
Grazing District do not reflect that this reappraisal was com-
municated to the district in 1950. The State Grazing District
was in control of this area and their minutes show that in May
of 1950 they had held and determined that the portion of the
Carnahan place that Burke was purchasing had a preference
right of 97 animal units. It is presumed the District's minutes
speak the truth.

Further, the result could be far different on rehearing if
these factual matters are properly taken into consideration
since by the minutes of the Grazing District it is apparent that
these reductions in preference rights were effected after Burke
purchased the property. Granting, for argument only, that
both under the Federal Range Code and the applicable statutes
of the State of Montana, these preferences could be changed,
yet such procedure to change the preference does not deprive
the preference right holder of his state and federal constitu-
tional guarantees. These preference rights appurtenant to the
base property are valuable rights. See Ivins v. Hardy, 134
Mont. 445, 333 Pac. (2d) 471. Although these property rights

may be subject to defeasance and to many conditions regarding their transfer, they are valuable property rights. For this reason the holder of such rights is entitled under the Constitutions of the United States and the State of Montana to due process of law, that is to notice and hearing before these rights are taken from him. See Great Northern Railway Co. v. Roosevelt County, 134 Mont. 355, 332 Pac. (2d) 501. If the Grass Conservation Act or the Federal Range Code deny the right of notice and hearing as was done in this instance, then, as so applied to the facts in this case, they are unconstitutional. Further because of the grave importance of the majority's opinion to the livestock industry of this state, in that the majority opinion will set a precedent which may cast a cloud upon the validity of many grazing rights of permittees under State Grazing Districts, under the facts set forth in this record, a rehearing should be granted.

MR. JUSTICE ADAIR, being absent from the state has authorized me to state that he concurs in MR. JUSTICE BOTTOMLY'S foregoing dissent.