WILLARD BRUCE HELDENBRAND, Plaintiff and Appellant, *v.* The MONTANA STATE BOARD OF REGISTRATION FOR PROFESSIONAL ENGINEERS AND LAND SURVEYORS, J. H. MORRISON, A. E. ADAMI, E. H. DODGE, D. T. HOENSHELL, H. E. MURDOCK, as Members of said Board, Defendants and Respondents.

No. 10917.
Submitted January 13, 1966. Decided February 25, 1966.
411 P.2d 744.

Sandall, Moses & Cavan, John J. Cavan (argued), Billings, for appellant.

Drysdale & Anderson, McKinley T. Anderson, Jr. (argued), Bozeman, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

Appellant, Willard Bruce Heldenbrand, petitions this court to review the denial of his application for a writ of mandate ordered by the Honorable Guy C. Derry, presiding judge of the Yellowstone County District Court. Appellant applied for the writ on July 22, 1963, requesting the court to direct the respondent, Montana State Board of Registration for Professional Engineers and Land Surveyors, (hereinafter called the Board) to register him as a professional engineer or to show cause why it had not done so. The respondent Board by a return and answer to the writ stated that Mr. Heldenbrand applied for registration under subd. (1)(c) of section 66-2336, R.C.M.1947, and that it determined that he was not qualified for registration and denied his application. By way of defense, respondent alleged that appellant had a plain, speedy and adequate remedy at law by appeal under section 66-2345, R. C.M.1947, and that a writ of mandate was, therefore, improper procedure under the circumstances of this case. Respondent alleged further that appellant had failed to establish his qualifications to its satisfaction and that it was within its authority under subd. (1)(c) in refusing to register him.

Commencing May 29, 1964, the district court heard evidence on the application for the writ of mandate, and briefs were submitted by the parties on the issues raised by their plead-

ings. After carefully evaluating the evidence and considering the law, the court denied the application for the writ on July 17, 1964, ruling that the only remedy available to appellant was by appeal under section 66-2345, and that by virtue of the requirements of section 66-2336, the respondent Board as a matter of law had discretion to decide whether an applicant for registration as a professional engineer had qualified for registration under subd. (1) (c).

Appellant's specifications of error may be stated by the following two questions:

(1) Does the appellant have a plain, adequate, or speedy remedy at law by appeal?

(2) Does the respondent Board have discretion under the provisions of section 66-2336, subd. (1)(c), R.C.M.1947, to require an applicant for registration thereunder to take the Professional Engineer Examination to qualify for registration as a professional engineer in Montana?

The story behind this case began with Mr. Heldenbrand's application under subd. (1)(b) of section 66-2336 for permission to take the December 1960, Professional Engineer Examination administered by the Montana State Board of Registration for Professional Engineers and Land Surveyors. His application was accepted. He scored 55.5; a passing grade was 70 and above. After a personal interview with the Board in November 1961, he agreed to retake the examination in December 1961, and the Board agreed to re-evaluate the examination he had written in 1960. A few days before the 1961 examination was to be given, however, Mr. Heldenbrand advised the Board by letter that his business required him to be out of the state on the date the test was to be given. He did not take the 1961 examination. On January 24, 1962, the Board reviewed Mr. Heldenbrand's application for registration on the basis of its re-evaluation of his 1960 examination and of other material he had subsequently submitted for its consideration. Again it refused to register him, but certified him to take the December 1962, examination.

We observe from the record that the Board acted with courteous regard for the applicant, agreeing to re-evaluate his examination paper. At this point the applicant was satisfied and agreed to retake the examination. We are not aware of what, to a professional applicant to take an examination, is more important than his presence in the state at the time the examination is given. In early June 1962, Mr. Heldenbrand made written application to the Board for registration under subd. (1)(c) of section 66-2336, which allows the Board to consider as "minimum evidence satisfactory to the board that the applicant is qualified for registration as a professional engineer * * * a specific record of twelve years or more of lawful practice in engineering work of a character satisfactory to the board and indicating that the applicant is competent to practice engineering and has had responsible charge of important professional engineering work for at least five years, and provided applicant is not less than thirty-five years of age." Mr. Heldenbrand had reached thirty-five in April 1962. The Board in late July 1962, considered this new application and again refused to register Mr. Heldenbrand as a professional engineer, but affirmed his admittance to the December 1962, examination. Mr. Heldenbrand then secured legal assistance and had his attorney present his case before the Board asking it to reconsider his application under subd. (1)(c). At its meeting in October 1962, the Board reaffirmed its action taken on the application at its previous July meeting. Its position has been and continues to be that Mr. Heldenbrand qualify himself for registration by retaking the examination. Following the denial of this final request for registration, Mr. Heldenbrand brought the matter to court by filing his application for a writ of mandate in mid-July 1963.

The first question to which we will direct our attention concerns the appropriateness of the remedy of mandamus in this case. That writ "must be issued in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law" by appeal. Section 93-9103, R.C.M.1947. The

final paragraph of section 66-2345 outlining procedure for revocation of registration, hearings, reissuance of certificates, and appeal in matters concerned with the registering of professional engineers, provides that "Any person who shall feel aggrieved by any action of the board in denying or revoking his certificate of registration may appeal therefrom to the district court of the county in which such denial or revocation was made, and, after full hearing, said court shall make such decree sustaining or reversing the action of the board as to it may seem just and proper."

The appellant questions whether this procedure for appeal applies generally, arguing that it could be maintained "that the right of appeal applies only to persons aggrieved under section 66-2345, to revoke the registration of registrant or denying the reissuance of a certificate already revoked. In other words, the right of appeal may be held not to apply to an original application for registration under section 66-2336." He then cites the case of Skelton v. Lees, 8 Utah 2d 88, 329 P.2d 389, and the problem with which Mr. Justice Worthen wrestled in his special concurring opinion under the Utah statute strikingly similar in language to our section 66-2345. "How can the committee deny his *certificate*," the learned justice queries, "before one is issued? The only reasonable construction of the language used is that it refers to the denial of the application to reissue a certificate * * *. Until a certificate has been issued there is no certificate to deny." The other members of the court were not convinced that this logical difficulty existed. The majority opinion, written by Mr. Justice Crockett, concluded that the "language * * * would seem meaningless" unless it applied generally—to appeals from the denial of an initial application for a certificate as well as to the revocation and reissuance problems. "(I)t seems that most reasonable interpretation thereof is that its purpose was to provide the method of review by the courts for all matters arising under the chapter."

We note, as did the Utah court with the Utah statute,

that this final paragraph of section 66-2345 is the only part of the entire chapter concerning the registration of professional engineers which provides a registrant with a remedy from any Board action. It was placed by the compilers, it is true, in a section of the chapter outlining procedure for revocation and reissuance of certificates once registered. But its location in the chapter or in a particular section is not determinative of its meaning and purpose. The language used is all inclusive. To read "any action" of the Board in "denying or revoking" a certificate of registration as limited only to the revocation and reissuance situations is qualifying that language unduly and reading modifiers into the statute not placed there by the legislature. The fact that inclusive language is used, the fact that the right to appeal is granted in a paragraph separate and apart from the provisions on revocation and reissuance, and the fact that no other provision is made in the entire chapter to give relief for capricious and arbitrary action of the Board in denying an initial application for a certificate of registration, persuades us that the right to appeal applies to "any action" of the Board. With such a right of appeal by statute, an applicant for registration has improperly determined his remedy in asking for a writ of mandate.

Appellant then argues that even if it is determined that he has a right of appeal, the court could not grant him the relief for which he has asked. For the court to rehear his case on appeal and to order that the Board register him, he contends, would be an unconstitutional exercise of power by the judiciary of an administrative function. He argues that the statute does not "grant to the court the power to reverse the action of the Board upon such *terms* as may seem just and proper but merely grants the court the power to sustain or reverse' the action of the Board whichever action it may deem just and proper * * *. If the authority possessed by the court, in the section referred to, is a decree sustaining or reversing the action of the Board, then and in that event the court would be powerless to grant to the plaintiff any relief for the effect of

such a reversal would be to leave the petitioner's application in exactly the same position as though no action had been taken by the Board." Consequently, he concludes, a writ of mandate is a more certain remedy and would provide him with the relief he seeks.

In answer to these arguments we note the problem which the appellant has created for himself in trying to use non-analogous administrative functions and the rules which have been designed to apply to them, in determining the scope of duty assigned to the Montana State Board of Registration for Professional Engineers and Land Surveyors and the rules governing its powers. That Board, under the guidelines of section 66-2336, must determine when an applicant is qualified to be registered as a professional engineer in Montana. The legislature has specifically stated that the requirements outlined there are only "minimum evidence" satisfactory to the Board that a person is qualified. The legislature has recognized that caution must be taken by the Board "in order to safeguard life, health, and property, and to promote the public welfare." Section 66-2324. This is a most serious responsibility and involves an exercise of judgment which must be based only on the most reliable evidence available to measure ability and qualification. However, it is recognized that even the most weighty administrative judgment may be made capriciously and arbitrarily. Therefore, the legislature has provided a safety valve in the administrative machinery. The function of the district court, as provided by the statutory right of appeal in this system of administrative decision-making, is to assure that administrative officials do not overstep the guidelines of their authority set down by the legislature. The court acts as a watchdog and has power to scrutinize and assess the administrative judgment to ascertain if all decisions have been determined properly according to the Board's powers. Cf. Peterson v. Livestock Commission, 120 Mont 140, 181 P.2d 152; Baker Sales Barn, Inc. v. Montana Livestock Commission, 140 Mont. 1, 367 P.2d 775; Langen v. Badlands Co-op State Grazing

Dist., 125 Mont. 302, 234 P.2d 467; State ex rel Kellogg v. Dist. Court, 13 Mont. 370, 34 P. 298; State ex rel Gattan v. Dist Court, 39 Mont. 134, 101 P. 961; State ex rel. Seres v. Dist. Court, 19 Mont. 501, 48 P. 1104; State ex rel. Marshall v. Dist. Court, 50 Mont. 289, 146 P. 743. The right of appeal is not rendered nugatory because the statute does not specifically prescribe rules to guide the district court in trying such an appeal. "Awkward, difficult, and unsatisfactory as a trial of this case in the district court might, and doubtless would, be, we are of the opinion that the learned district judge would be able to devise ways and means not incompatible with the Code for disposing of the case." State ex rel. Seres v. Dist. Court, supra, 19 Mont. at 505, 48 P. at 1105. "No doubt the legislature contemplated that such proceedings should be conducted in such an orderly manner as that no substantial right would be denied * * *." State ex rel. Kellogg v. Dist. Court, supra, 13 Mont. at 375, 34 P. at 300. Section 66-2345 gives the district court latitude in devising relief "as to it may seem just and proper." On appeal the court could either direct the license to issue or it would refuse to uphold the applicant in his claim and thus relegate him back to the Board for further processing. See State Board of Technical Registration v. Bauer, 84 Ariz. 237, 326 P.2d 358. There is no supplanting of administrative powers and authority of an unconstitutional nature by the court in these procedures. There is simply a correction made, if need be, in the exercise of judgment by the administrative body. The statutory guidelines still prevail and must be followed. The relief to be granted, or the disposition to be made of the appeal, must depend on the facts and circumstances of each case as it comes before the district judge. Corrective machinery, by its nature, must be given flexible limits, within of course the constitutional and statutory framework, that adequate and proper dispositions of each case may result. But that disposition must comport with guidelines of the statute as determined by the legislature.

We will now comment briefly upon the question whether

under subd. (1) (c) of section 66-2336, the Board may require the applicant to take the Professional Engineer Examination. As defined in section 66-2326 a "professional engineer" is "a person who, by reason of his special knowledge of the mathematical and physical sciences and the principles and methods of engineering analysis and design, acquired by professional education and practical experience, is qualified to practice engineering as hereinafter defined, as attested by his legal registration as a professional engineer. * * *

"The term 'practice of engineering' within the meaning and intent of this act shall mean any professional service or creative work requiring engineering education, training, and experience and the application of such special knowledge of the mathematical, physical, and engineering sciences to such professional services or creative work as consultation, investigation, evaluation, planning, design, and supervision of construction for the purpose of assuring compliance with specifications and design, in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works, or projects."

Section 66-2336 requires that a professional engineer be registered and outlines what the Board may consider as "minimum evidence" which must be shown to its satisfaction before granting registration. Under subds. (1) (a) and (1) (b) an examination is required. Under subd. (1) (c) an examination is not required if the applicant can show "a specific record of twelve years or more of lawful practice in engineering work of a character satisfactory to the board and indicating that the applicant is competent to practice engineering and has had responsible charge of important professional engineering work for at least five years, and provided applicant is not less than thirty-five years of age." By its interpretation of these standards, which we think correct, the Board has required that the record of engineering work "of a character satisfactory to the board" be of a type and quality which conclusively demonstrates that the applicant has acquired edu-

cation, knowledge and experience approximating that required for registration by examination under subds. (1)(a) and (1)(b). We find it difficult to follow appellant's reasoning that the Board is vested with some discretion in the case of an application under subds. (1)(a) or (1)(b), principally because the giving and grading of an examination requires it, but that under subd. (1)(c) the Board is simply a fact finding body that has no power to exercise judgment. In our analysis of the testimony and if we have correctly followed the argument of the Board, Mr. Heldenbrand has not produced a record of "twelve years or more of lawful practice in engineering work of a character satisfactory to the board." In fact, he has shown just the opposite by failing to pass, and very decisively, the qualifying examination. Just because a year elapsed and he turned thirty-five years of age does not mean that he has become any more qualified, or has become so experienced that he no longer need to prove himself by an examination. Certainly the Board need not close its eyes to the fact that he failed to qualify under subd. (1)(b) in processing his application under subd. (1)(c).

The only logical interpretation that can be established from reading the statute in light of its purpose is that the legislature has empowered the Board to administer registration of the engineering profession after setting up minimum standards of qualification. That task requires the exercise of discretion. The statute grants it. The context of the Board's work is to administer the registration requirements with purposeful watchfulness in safeguarding society from non-qualified applicants. The Board may require or dispense with an examination under subd. (1)(c) as the situation before it requires, and depending upon its evaluation of the specific record of the applicant before it. An applicant, who has shown that he cannot become qualified by an examination, cannot escape his lack of knowledge and education by asserting the right to be registered because he feels that he has produced a record of experience which the Board must accept. The stat-

ute's design is to allow for the fact that many people by their experience gain the necessary knowledge and education required by their profession and could, if examined, pass a qualifying examination. We find it unthinkable that the legislature would require that the Board close its eyes to the fact that an applicant had failed its examination and must judge him solely on the basis of the record of experience he produced simply because he is 35 years old and has worked for twelve years in the engineering field. Each of the subdivisions (1)(a), (1)(b), and (1)(c) present equivalent qualifying demands. Each is designed to handle a particular problem. Each gives the Board the discretion it needs to conclusively ascertain whether the legislature's requirements for registration have been met.

The order denying the writ of mandate and remanding Mr. Heldenbrand's application to the State Board for further processing is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DOYLE, ADAIR and CASTLES concur.