JUSTICE HUNT
delivered the Opinion of the Court.
Appellant Nelson Seeley (Seeley) filed suit in the First Judicial District Court, Lewis and Clark County, alleging that Respondents Gary Davis (Davis) and Walter Murfitt (Murfitt) cost him the opportunity to purchase a commercial property in Helena, Montana. Seeley contended that the actions of Davis and Murfitt constituted legal malpractice and that he incurred damages due to their alleged malpractice. After discovery, Davis and Murfitt moved the District Court for summary judgment, asserting no genuine issues of material fact existed and they were entitled to summary judgment as a matter of law. The District Court granted the motion, concluding the facts presented unequivocally indicated that Davis and Murfitt had fulfilled the duty of care owed to their client Seeley. Seeley appeals. We affirm.
The sole issue presented on appeal is whether the District Court erred in granting summary judgment in favor of Davis and Murfitt.
Davis and Murfitt are attorneys practicing law in Helena, Montana. Seeley is also an attorney, although not in practice. Seeley is the owner of several commercial and rental properties in Helena.
*519 In 1990, Lewis and Clark County (the County) acquired possession of the Placer Center in Helena after the braiding’s previous owner failed to pay the property taxes. After taking title, the County twice attempted to sell the Placer Center at auction but received no bids. Seeley, who was interested in purchasing the building, attended both auctions but did not bid. After failing at the second auction to receive any bids at the listed price, the County announced that it would next accept sealed bids for the property.
On or about Friday, November 9,1990, Seeley determined that he wanted to buy the building without waiting for the sealed-bid process. He therefore offered to buy the building for the price set at the second auction. In discussing the proposed sale with County Commissioner Linda Stoll-Anderson (Stoll-Anderson), Seeley suggested drawing up an earnest money agreement and giving the County a nonrefundable deposit of $1000 to hold the building for one week. Then, by the following Friday, Seeley would either tender the balance of the down payment or decide not to proceed with the sale, in which case the County would keep the $1000 earnest money deposit. Stoll-Anderson agreed to this process, and an earnest money agreement was prepared. Seeley did not immediately sign the agreement or tender the $1000; instead, he advised Stoll-Anderson that he was giving the earnest money agreement and deposit to his attorneys, Murfitt and Davis, who would give the documents to her on Tuesday morning after reviewing the building’s history and checking the title. (Tender of the deposit and the agreement was set for Tuesday morning instead of Monday morning because Monday was a holiday.) Stoll-Anderson agreed to accept the earnest money agreement on Tuesday, but advised Seeley that she did not consider the County obligated to “hold” the building for him in the absence of a signed agreement. She further advised him the building was subject to sale on a “first-come, first-served” basis until she received a signed earnest money agreement or a signed contract for sale.
Seeley then took the earnest money agreement and deposit check to the offices of Murfitt and Davis. He directed them to check the building’s history for liens or “other complications” so serious that he might not want to finalize the purchase. Assuming none were found, Murfitt and Davis were to take the deposit and signed earnest money agreement down to Stoll-Anderson on Tuesday morning. Seeley was aware that the County offices would be closed until Tuesday morning due to the three-day holiday weekend. Having dropped off the paper *520 work with the attorneys on Friday, Seeley left for the weekend to go hunting in Canada.
On Monday, Seeley called to check in with Davis. Davis reported that he was having an informal title search done and that he expected a telephone report on it the next morning. Seeley reiterated his interest in the building and contends that he directed Davis to present the earnest money agreement and deposit to Stoll-Anderson first thing Tuesday morning. Davis contends that his understanding was that he would deliver the documents as soon as he received the informal title report, provided no major problems with the title were found.
By early Tuesday morning, Stoll-Anderson had not received the deposit and agreement. She called Davis to ask whethér the documents were going to be delivered and he told her that he would take care of it. At about 10 o’clock Tuesday morning, the building was sold to a third party. Davis and Murfitt were still waiting for the title report.
Seeley learned that the building had been sold to someone else when he returned from hunting in Canada. He filed suit against Davis and Murfitt, alleging that their failure to deliver the earnest money agreement and deposit resulted in his loss of the opportunity to buy the building and constituted legal malpractice. Davis and Murfitt responded that they had fulfilled their duty of care to their client and had followed Seeley’s instructions in waiting for the title report. After discovery, Davis and Murfitt moved for summary judgment, which the District Court granted. Seeley appeals.
The sole question presented on appeal is whether the District Corut erred by granting summary judgment in favor of Davis and Murfitt. This Court reviews the grant or denial of summary judgment rulings de novo. Mysse v. Martens (1996), 279 Mont. 253, 259, 926 P.2d 765, 769 (citing Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785). When reviewing a district court’s grant of summary judgment, this Court applies the same criteria as the district court based on Rule 56, M.R.Civ.P. Mysse, 926 P.2d at 769 (citing Bruner v. Yellowstone County (1995), 272 Mont. 261, 264-65, 900 P.2d 901, 903). Further, in order for summary judgment to be granted:
the movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then *521 determine whether the moving party is entitled to judgment as a matter of law.
Bruner, 900 P.2d at 903. This Court reviews the legal determinations made by a district court to determine whether the court erred. Mysse, 926 P.2d at 769.
In this case, Seeley contends that the District Court erred in finding that no genuine issues of material fact existed. Seeley argues that several important factual points remain in dispute which should have precluded a grant of summary judgment.
First, the District Court found that Seeley had instructed Davis and Murfitt to deliver the agreement and check to the County on Tuesday after they had investigated any possible complications with the title to the building. Seeley contends this finding is erroneous, or at the least contested, because he asserts that his clear understanding with the attorneys was that the earnest money and agreement had to be delivered first thing Tuesday morning, regardless of the status of the search or whatever defects the attorneys may have discovered. Second, the District Court found that Davis and Murfitt did not know that time was of the essence in delivering the earnest money agreement, or that a third party was seriously interested in purchasing the building. Seeley contends this is erroneous, or at least contested, because Stoll-Anderson recalled informing the attorneys that other parties were also interested in the building when she called their office on Tuesday morning and because Seeley had directed the attorneys to tender the agreement and check to Stoll-Anderson first thing Tuesday morning. Seeley therefore contends that genuine issues of material fact remain regarding the parties’ representations and intentions. Such factual issues, Seeley argues, indicate that summary judgment was inappropriate in this case.
After reviewing the record in its entirety, we cannot agree that the findings in question are subject to attack. No genuine issue of material fact exists regarding the representations and intentions of the parties. A reading of the record leaves but one reasonable interpretation of events, which was the interpretation adopted by the District Court in its findings of fact. Seeley seeks to create a genuine issue of material fact by asserting that his instruction to Davis and Murfitt to check the building’s title for major defects was secondary to his instruction that they deliver the earnest agreement and check to the Comity first thing Tuesday morning. Common sense indicates, however, that if Seeley’s intent was to secure his right to purchase the building regardless of the status of the title, he could have *522 tendered the check and agreement to Stoll-Anderson himself on Friday, before leaving for Canada. Instead, he transferred the documents to the attorneys, with instructions to investigate the title for major problems.
Furthermore, Seeley’s assertion that he told the attorneys to tender the check and agreement without waiting for the results of the preliminary title search is contradicted by his deposition testimony. In his deposition, Seeley testified that, before leaving town on Friday, he instructed Davis to “check on the status of the title” and told him “[t]hat I was going to buy the building unless he came up with something before Tuesday, before we presented the check back, that would say don’t buy it.” (Emphasis added.) Seeley further testified that he had called Davis on Monday morning and told him “I had done a lot of staying awake nights thinking about [the building], what I’d do with it, and I wanted it unless there was a complication, and the property is a good value, I definitely want it, and get that check up to [Stoll-Anderson] unless you have something.” (Emphasis added.) In addition, Seeley admitted in his deposition that he himself was unaware that a third party was also seriously interested in buying the building. Likewise, Davis and Murfitt also were unaware of the third party’s interest until after the building was sold.
The depositions in this case indicate that neither party was aware of any great urgency in tendering the check and agreement due to the possibility a third party might step in and buy the building on Tuesday morning. The parties do not dispute that the check and agreement were to be delivered to Stoll-Anderson Tuesday morning. They dispute only whether the check should have been delivered before receipt of the title report. Seeley insists he directed Davis and Murfitt to tender the documents first thing Tuesday morning. Davis and Murfitt contend they were told to deliver the documents as soon as possible after receiving the informal title report. As noted above, Seeley’s contention is contradicted by his own deposition testimony. The District Court correctly found that the question of when the documents were to be delivered was not a genuine issue of material fact which would defeat the motion for summary judgment.
Seeley next contends that even if Davis’s and Murfitt’s actions were not willfully negligent, the parties nevertheless did not have a mutual understanding of what Seeley expected the attorneys to accomplish. He contends that the failure of the attorneys to discover his intentions, as well as their failure to avoid the misunderstanding *523 by setting forth what they intended to do and when, constituted legal malpractice.
The District Court, however, found no such misunderstanding. Rather, it found that Seeley instructed Davis and Murfitt to investigate the title to the building before tendering the earnest agreement and deposit. The attorneys’ duty to do so did not change just because a third party bought the building before the title investigation was completed, especially considering that neither Davis, Murfitt, nor Seeley were aware of the third party’s interest until after the sale. Given Seeley’s extensive real estate background and legal training, there was no reason to believe he did not understand what he had asked of Davis and Murfitt.
When reasonable minds could reach but one conclusion, questions of fact may be decided as a matter of law. Mills v. Mather (1995), 270 Mont. 188, 194, 890 R2d 1277, 1281. The District Court concluded no genuine issues of material fact existed in this case and summary judgment was proper as a matter of law. The District Court did not err in so concluding.
Affirmed.
CHIEF JUSTICE TURNAGE, JUDGE LANGTON, District Judge, sitting for JUSTICE LEAPHART and JUDGE RODEGHIERO, District Judge, sitting for JUSTICE REGNIER concur.