No. 97-278

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 51

VICTOR A. JOHANSEN,

Petitioner and Appellant,

v.

STATE OF MONTANA, DEPARTMENT OF
NATURAL RESOURCES AND CONSERVATION,

Respondent and Cross-Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William G. Sternhagen, Sternhagen Law Firm, Helena, Montana

For Respondent:

Tommy H. Butler, Special Assistant Attorney General, Montana
Department            of Natural Resources & Conservation, Helena, Montana

Submitted on Briefs: September 18, 1997

Decided: March 10, 1998
Filed:

_____
Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1     Victor A. Johansen (Johansen) and the Department of Natural Resources and Conservation (Department) have filed cross-appeals from an order of the First Judicial District Court, Lewis and Clark County.  Johansen had filed a petition for judicial review in the District Court of the Department's decision to cancel his lease of agricultural land for failing to make timely lease payments.  The District Court granted summary judgment in favor of the Department and dismissed Johansen's petition for lack of jurisdiction.  We reverse and remand.

¶2     The sole issue we address on appeal is whether the District Court erred in holding that it did not have jurisdiction to review Johansen's petition for judicial review of the Department's decision to cancel his agricultural lease pursuant to § 77-6-506, MCA, for failing to make timely lease payments.

                    FACTUAL AND PROCEDURAL BACKGROUND

¶3     For decades, Johansen's family leased agricultural land from the State of Montana. Johansen continued leasing the same land that had originally been leased by his grandfather. The date when Johansen's rental payments were due are set by statute.  Section 77-6-506(2), MCA.  Pursuant to that statute, his latest lease payment was initially due on November 15, 1995.  If he failed to make a payment by that date, then the full rental and a $25.00 penalty were due on December 31, 1995.  The statute also provides the Department with the discretion to extend the deadline past that date.  Specifically, that statute provides:

> For agricultural leases and the agricultural portion of leases containing both grazing and agricultural land, when the rental is paid on a crop share basis or on a crop share/cash basis, the rental is due in cash on or before November 15 of the year in which the crop is harvested.  If the rental is not paid on or before November 15 of the year of crop harvest, a $25 penalty shall be imposed on the lessee.  If the full rental and the $25 penalty are not paid on or before December 31 of the year in which the crop is harvested, the entire lease is canceled.  The department may extend the deadline in writing.  If the lessee does not make the rental payment by the date of extension, the entire lease is canceled.  Any rental payment made after November 15 of the year in which the crop is harvested, including payment made after an extension of the deadline, must include the $25 penalty.

Section 77-6-506, MCA.

¶4   Because Johansen had not paid the rent by November 15, the full rental plus a $25 penalty was due on December 31.  Johansen attempted to make this payment from his rural postal box.  Postal service for his route is provided by a contract carrier.  Contractors, including the contractor on Johansen's route, routinely accept letters for mailing that are placed in the postal box without the stamps affixed when the customer has provided the correct amount of money for postage.  In such a case, the contractor accepts the mail, takes it to the post office, and affixes the postage.

¶5    Johansen testified that he and his father before him have mailed the lease payments in this fashion from his rural postal box for the past 38 years.  On Friday, December 29, 1995, Johansen again attempted to mail his lease payment in this fashion.  He placed the envelope containing his payment in his rural postal box with 32 cents.   The postal carrier did not take the letter, however, because snow had blown into the mailbox.  The postal carrier left Johansen a note stating that because the box was filled with snow, she was unable to find all the money to pay the required postage.  She requested that Johansen remove the snow.

¶6   On Saturday, December 30, 1995, when Johansen went to the mailbox, he discovered the postal carrier's message.  He removed the snow and again left the rental payment in the mail box with money to pay the required postage.  That day the postal carrier found the mail and the money in the mailbox, which had been cleaned.  Once again, she declined to accept the letter.  She left a note, stating that she did not have any stamps and would be unable to get any more because it was a Saturday.

¶7   The next two days, Sunday, December 31, 1995, and Monday, January 1, 1996 were both legal holidays, so the post office was closed and mail was not delivered.  See  1-1-216(a) and (b), MCA.  On Tuesday, January 2, 1996, Johansen went to his mailbox and discovered the note left by the postal carrier the previous Saturday and saw that the envelope containing the rental payment was still in his postal box.  That same afternoon, he drove to East Helena and personally mailed the payment from the East Helena post office.  However,

the envelope did not receive a postmark until the next day, January 3, 1996.

¶8   By letter dated January 24, 1996, and delivered February 9, 1996, the Department notified Johansen that it was canceling his agricultural lease, for failure to timely pay his rent.  It notified him that he  no longer had the right to use the leased land, and that any use would be considered a trespass.  The Department also informed him that it would be advertising the land for lease.

¶9   By letter dated April 1, 1996, Johansen requested that the Department reinstate his lease.  He argued that the Department had the authority to do so pursuant to § 77-6-211(3), MCA, which provides that a lease may be reinstated where "the violation is not serious enough to warrant cancellation. . . ."  Alternatively, Johansen requested that the Department give him a contested case hearing pursuant to the Montana Administrative Procedure Act (MAPA), § 2-4-601, et seq., MCA.

¶10  The Department informally discussed the cancellation of the lease with Johansen. With regard to Johansen's claim that he mailed the letter from the East Helena post office on January 2, 1996, the Department admitted that if had been postmarked that day rather than January 3, it would not have canceled the lease.  Subsequently, by letter dated May 30, 1996, the Department  denied his request for a contested case hearing, stating that because no person could verify (1) that he indeed placed the rental payment in the mail in a timely fashion; and (2) that the post office routinely accepts letters for mailing without postage stamps affixed to them, there were no issues of fact or law to be resolved by a contested case hearing.  It also denied his request for reinstatement of the lease, and stated that the letter constituted a final agency decision pursuant to MAPA, § 2-4-623, MCA, which pertains to final agency decisions adverse to a party in a contested case.

¶11  On June 11, 1996, Johansen requested a redetermination of the Department's decision or alternatively an appeal to the State Board of Land Commissioners pursuant to   77-6-211, MCA.  In direct response to the Department's statement that no person could verify whether the postal carrier accepts letters for mailing without postage stamps affixed to them,

Johansen submitted a letter from the postmaster in East Helena verifying that the postal
carrier accepts such mail so long as money is provided for the stamps.  He additionally
submitted relevant excerpts from the USPS Handbook.  Johansen also challenged the
Department's failure to address or make factual findings or legal conclusions that addressed
the issues raised by Johansen in his original request for reinstatement.

¶12  At some point, the postal carrier servicing Johansen's route testified by affidavit that
she routinely accepts letters from the Johansen residence without the stamps affixed when
the correct amount of money is provided for postage.  She also confirmed Johansen's
statements that she found mail in his mailbox on Friday, December 29, and again on
Saturday, December 30, but did not take the mail because snow had blown into the mailbox
on Friday, and she was unable to get stamps on Saturday.  Although this affidavit was filed
with the District Court in connection with various motions below, the record is unclear as
to when she signed the affidavit or when Johansen provided it to the Department, if at all.

¶13  By letter dated June 25, 1996, the Department again refused to reinstate his lease and
rejected his request for a hearing before the State Board of Land Commissioners.  The
Department stated that the cancellation of the lease was "automatic."  Although the
Department insisted that cancellation was "automatic," it did not address its statutory
authority to extend the rental due date past the December 31, 1995 deadline, nor did it
explain under what circumstances it has done so in the past.  See § 76-6-506, MCA.  It also
rejected Johansen's evidence that his rural postal carrier accepted letters without postage
affixed to it, even if there was money for the postage in the mailbox along with the letter.
Additionally, although it had earlier stated in its April 1, 1996 letter that its decision was a
final decision under contested case proceedings pursuant to MAPA, § 2-4-623, MCA, it now
stated for the first time that Johansen had no statutory right to a contested case hearing,
because termination for nonpayment of rent was automatic pursuant to § 77-6-506, MCA.
The Department also stated that its purpose in meeting informally with Johansen was to
verify that his payment was not received by the statutory deadline.  In its view, whether it
set out a formal division of facts and law was thus "irrelevant."  Finally, it stated its view that

§ 77-6-211, MCA, which allows for reinstatement when the lease violation is not serious,
only applies to cases where the lease is canceled "for cause," such as for overgrazing, and
not where the lease is canceled for failure to timely pay rent.

¶14  Consequently, Johansen filed a petition for judicial review with the District Court.
The court ruled in favor of the Department on the parties' cross-motions for summary judgment.  It held that the Department's action in this case was not a contested case proceeding, and that it therefore had no jurisdiction under MAPA to review the agency's
decision.  Accordingly, it dismissed the petition for lack of jurisdiction.  It is from this
decision that the parties have filed cross-appeals.

### STANDARD OF REVIEW
¶15  This Court reviews the grant or denial of summary judgment rulings de novo.  Seeley
v. Davis (Mont. 1997), 946 P.2d 119, 121, 54 St. Rep. 1006, 1007.   It applies the same Rule
56, M.R.Civ.P., criteria used by the district court.  Seeley, 946 P.2d at 121.  In response to
a motion for summary judgment in this case, the court dismissed the case based upon lack
of jurisdiction.  This Court reviews that legal determination to determine whether the court
erred.  Seeley, 946 P.2d at 121.
### DISCUSSION

¶16  The District Court held that the Department's action in this case was not a contested
case proceeding under MAPA, § 2-4-601, et seq., MCA.  It held that judicial review pursuant
to MAPA was therefore not appropriate, and concluded that it had no jurisdiction to review
Johansen's claim.

¶17  On appeal, Johansen argues that the Department unlawfully denied him his right to
a contested case proceeding pursuant to MAPA, § 2-4-601, et seq., MCA.  He contends that
the District Court did have jurisdiction under MAPA, § 2-4-701, et seq., MCA, to review his
petition and that it should have ordered the Department to grant him a full contested case
hearing prior to canceling his lease.

¶18  The Department agrees with Johansen that the District Court had jurisdiction to
review his petition.  However, it disputes Johansen's contention that he was entitled to a
contested case hearing or that the District Court had jurisdiction to review the

petition

pursuant to MAPA. Instead, it argues that the District Court had authority to review the

petition pursuant to the standard of review for informal agency decisions set forth in Langen

v. Badlands Co-op State Grazing District (1951), 125 Mont. 302, 234 P.2d 467; and North

Fork Pres. v. DSL (1989), 238 Mont. 451, 778 P.2d 862.

¶19 For the reasons elaborated below, this Court agrees with the District Court's determination that Johansen was not entitled to a contested case hearing and that MAPA was

therefore inapplicable. But we do not agree with the court's conclusion that it therefore

lacked jurisdiction to review Johansen's petition. We hold that the District Court did have

jurisdiction to review the Department's decision to determine whether the lease cancellation

was arbitrary, capricious, unlawful, or unsupported by substantial evidence.

I.

¶20 Johansen is correct in asserting that pursuant to MAPA, an administrative agency must

afford all parties a trial-type hearing in a "contested case." Sections 2-4-601, 2-4-612, MCA.

He is equally correct in asserting that the District Court has jurisdiction to conduct a judicial

review of such contested cases. Section 2-4-701, et seq., MCA. But the statutory requirement of a trial-type hearing does not apply to every situation where a person's interest

is adversely affected by agency action. Rather, such a hearing is required only in "contested

cases."

¶21 A "contested case" within the meaning of MAPA is:
> a proceeding before an agency in which a determination of legal rights, duties, or privileges of a party is required by law to be made after an opportunity for hearing. The term includes but is not restricted to ratemaking, price fixing, and licensing.

Section 2-4-102(4), MCA. The lease of agriculture land does not constitute ratemaking or

price fixing, and Johansen does not contend that the lease constitutes a "license." We

therefore turn to the statutory provisions governing the lease of agricultural land to determine

whether the Department was "required by law" to afford Johansen a trial-type hearing prior

to canceling his lease.

¶22 The termination of a lease for failing to make a rental payment is provided for

in § 77-6-506(2), MCA. That section contains no provision requiring the Department to hold a
hearing prior to canceling the lease. In contrast, § 77-6-211, MCA, provides for an
administrative hearing when a lease is canceled pursuant to § 77-6-113, MCA (for failing to
properly manage agricultural lands), § 77-6-208, MCA (for violating rules regarding
subleasing of land), § 77-6-209, MCA (for failing to seek approval before changing a grazing
lease to an agricultural lease), and § 77-6-210, MCA (for various causes, such as fraud,
misrepresentation, or using the land for purposes other than those authorized by the lease).
No provision requires the Department to hold a hearing when the lease is canceled for nonpayment.

§23 Although a contested case hearing is not required by statute, Johansen argues that
such a hearing is required by Montana's constitution. Specifically, he contends that such a
hearing is "required by law" pursuant to Article II, Section 17 of the Montana State Constitution, which provides:

> Due process of law. No person shall be deprived of life, liberty, or property
> without due process of law.

However, Johansen cites no legal authority and sets forth no analysis to support his
argument. Johansen fails to provide analysis as to whether he had a property interest in the
continuation of the agricultural lease that was canceled for failure to timely pay rent. Even
were we to assume that it does constitute "property" within the meaning of Montana's
constitution, he provides no analysis as to what process was due in this case. For example,
he cites no case law that requires the Department to hold a formal, pre-termination hearing
as opposed to an informal post-termination hearing. Finally, Johansen provides no analysis
as to how the Department allegedly violated his constitutional rights.

¶24 Johansen must cite authority for the position he advances. Rule 23, M.R.App.P. It
is not this Court's job to conduct legal research on his behalf, to guess as to his precise
position, or to develop legal analysis that may lend support to that position. State v. Carter
(Mont. 1997), ___ P.2d ___, ___, 54 St.Rep. 1235, 1240; State v. Fina (1995), 273 Mont.
171, 181, 902 P.2d 30, 38. Johansen has failed to establish that the Montana State
Constitution required the Department hold a formal, trial-type hearing prior to canceling his
lease. We hold that such a hearing was not "required by law" prior to terminating his lease,
and the District Court did not have jurisdiction pursuant to MAPA to review his

petition.

II.

¶25  Simply because an administrative decision is not a "contested case," however, does
not mean that Johansen has no avenue to seek review of the Department's decision. Indeed,
the Department itself admits that the courts have the inherent power to review its decisions,
whether or not they involve "contested cases."  Citing Langen and North Fork Pres., the
Department contends that the District Court may review any informal administrative decision
to determine whether the Department used a fair procedure, whether questions of law were
properly decided, and whether the decision was supported by substantial evidence. Johansen does not directly respond to the Department's argument, other than to argue that
the District Court has jurisdiction to review its decision pursuant to MAPA.  He does not
challenge the Department's interpretation of the correct standard of review for non-MAPA
agency decisions.

¶26  In North Fork Pres., this Court addressed its power to review a non-MAPA administrative decision.   That case involved a challenge to the Department of State Lands'
approval of an operating plan on an oil and gas lease on school trust lands.  North Fork
Preservation Association filed a complaint, alleging that the Department of State Lands had
failed to prepare an environmental impact statement as required by law.   North Fork Pres.,
778 P.2d at 863.  Upon reviewing the case, this Court noted that  § 2-4-704, MCA, the
standard of review for judicial review of contested case hearings under MAPA was
inapplicable, because that section deals with review of "contested cases," and that case did
not involve a contested case.  North Fork Pres, 778 P.2d at 865-66.  We thus addressed the
standard of review the district court should use in that non-MAPA case and stated:

> The review by the district court is only for the purpose of determining the legal rights of the parties involved.  This is so because of the division of governmental powers under the Constitution, neither the district court nor the Supreme Court may substitute their discretion for the discretion reposed in boards and commissions by the legislative acts.
> The appeal from the commission to the district court is for the purpose merely of determining whether upon the evidence and the law of the action of the commission is based upon any error of law, or is wholly unsupported by the evidence or clearly arbitrary or capricious.   On such review courts will only inquire insofar as to ascertain if the board or commission has stayed within the statutory bounds and has not acted arbitrarily, capriciously or unlawfully.

North Fork Pres., 778 P.2d at 866 (citing Langen, 234 P.2d at 470).

¶27 We further stated that in reaching its decision, the Department of State Lands was carrying out a statutory duty assigned to it and not to the courts and that its decision involved expertise within its province. Accordingly, we held that the standard of review to be applied by the trial court and this Court was whether the record established that the agency acted "arbitrarily, capriciously, or unlawfully." North Fork Pres., 778 P.2d at 867.

¶28 In this case, the Department is charged by the legislature with managing state trust lands, including the leasing of agricultural lands. Section 77-1-301(1), MCA, provides in part:

Under the direction of the board, the department has charge of the selecting, exchange, classification, appraisal, leasing, management, sale, or other disposition of the state lands.

The Department thus has jurisdiction in the first instance to determine whether to cancel a lease. We agree with the Department that it is the courts' function to review its decision to determine whether its decision is arbitrary, capricious, unlawful, or unsupported by substantial evidence.

¶29 The Department additionally argues that when conducting its review, the District Court should afford its decision great deference. The Department is correct in noting that the courts defer to an agency's decision where its resolution implicates substantial agency expertise. However, whether Johansen timely mailed his rental payment, whether the U.S. postal service "accepts" letters for mailing without postage on rural routes serviced by a contract carrier where a person has provided money for the postage, or whether mailing takes place upon placing a letter in a mailbox or only upon the receipt of a postmark are not disputes that invoke any particular expertise within the Department's province. They do not involve the high level of technical expertise that is required, for example, when the Department cancels a lease due to mismanagement of State land. Thus, although the reviewing courts will conduct a limited review of the Department's decision, it is not necessary that they accord any particularly special deference to the decision in this case.

¶30 We hold that the District Court did have jurisdiction to review the Department's

decision to cancel Johansen's lease for failing to make timely lease payments.  We reverse
and remand for further proceedings consistent with this opinion.

¶31  Reversed and remanded.

/S/  WILLIAM E. HUNT, SR.

We Concur:

/S/  JAMES C. NELSON
/S/  TERRY N. TRIEWEILER
/S/  JIM REGNIER
/S/  W. WILLIAM LEAPHART