No. 00-836

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 219

IN THE MATTER OF B.P. and A.P.,

Youths in Need of Care.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Wm. Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Timothy J. Whalen, Whalen & Whalen, Billings, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Jennifer Anders, Assistant Attorney

General, Helena, Montana

Marty Lambert, Gallatin County Attorney, Bozeman, Montana

Submitted on Briefs: July 26, 2001
Decided: November 6, 2001

Filed:

_____

Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 R.P. appeals from the Findings of Facts, Conclusions of Law and Order entered by the Eighteenth Judicial District Court, Gallatin County, adjudicating B.P. and A.P. as youths in need of care, placing their care and custody with their natural father, T.P., and suspending R.P.'s contact with the children until she submits to ongoing psychological treatment. We affirm.

¶2 R.P. raises the following issues:

¶3 1. Is the District Court's placement of the children with T.P. barred by the doctrine of res judicata?

¶4 2. Did the District Court err in refusing to remove the guardian ad litem?

¶5 3. Did the District Court err in denying R.P.'s petition for a writ of habeas corpus?

¶6 4. Did the District Court infringe on R.P.'s and her children's constitutional rights of religious freedom and privacy?

BACKGROUND

¶7 On January 15, 1999, the Department of Public Health and Human Services (Department) petitioned the District Court for temporary investigative authority and protective services regarding B.P. and A.P. after receiving reports that they were being emotionally and medically harmed by R.P., their mother and primary legal custodian after the dissolution of her marriage to T.P. *In re B.P.*, 2000 MT 39, ¶ 8, 298 Mont. 287, ¶ 8, 995 P.2d 982, ¶ 8. The Department's specific concern was that R.P.'s personal mental health issues had prevented the children from receiving adequate parenting and proper psychological and medical attention. *In re B.P.*, ¶ 8. The District Court appointed Mary Ann Brown (Brown) as the children's guardian ad litem and directed her to monitor the situation and submit a report. *In re B.P.*, ¶ 9. On February 8, 1999, the District Court ordered the children removed from R.P.'s home and placed in foster care. It also ordered the entire family to undergo psychological examinations. *In re B.P.*, ¶ 10.

¶8 R.P. appealed and we affirmed the District Court on February 15, 2000. We held the

court did not err in ordering protective services for B.P. and A.P., removing them from R.P.'s home, and refusing to remove the guardian ad litem. *In re B.P.*, ¶¶ 38, 42. We further held the District Court did not violate R.P.'s Fifth Amendment rights or her constitutional right of religious freedom. *In re B.P.*,¶¶ 46, 50.

¶9 R.P. subsequently renewed her motion in the District Court to have the guardian ad litem removed and petitioned for a writ of habeas corpus. The court denied the renewed motion and the habeas corpus petition. Thereafter, the court granted the Department's request to modify its petition from one for temporary legal custody to a petition for permanent placement of the children with their father, T.P., in California.

¶10 The District Court subsequently entered findings of fact and conclusions of law adjudicating B.P. and A.P. as youths in need of care. It placed custody of the children with T.P. in California and prohibited R.P. from any contact with them until she addresses her personal psychological problems and can engage in age-appropriate conversation with them. R.P. appeals.

## STANDARD OF REVIEW

¶11 In a youth in need of care proceeding, we review a district court's findings of fact to determine whether they are clearly erroneous. *In re M.P.M.*, 1999 MT 78, ¶ 12, 294 Mont. 87, ¶ 12, 976 P.2d 988, ¶ 12 (citation omitted). A finding of fact is clearly erroneous if it is not supported by substantial evidence, the court misapprehended the effect of the evidence, or a review of the record leaves us with a definite and firm conviction that a mistake occurred. *In the Matter of D.H. and F.H.* (1994), 264 Mont. 521, 525, 872 P.2d 803, 805 (citations omitted). We review conclusions of law to determine whether they are correct. *In re M.P.M.*, ¶12 (citation omitted).

## DISCUSSION

¶12 Is the District Court's placement of the children with T.P. barred by the doctrine of res judicata?

¶13 R.P. argues the current custody disposition is barred by the doctrine of res judicata. She asserts the District Court's placement of the children with T.P. is a re-adjudication of

an earlier custody order in her favor in her dissolution action, and that the parties in both actions are the same because the Department investigated claims of abuse during the dissolution action. We disagree.

¶14 The doctrine of res judicata operates to preclude a party from relitigating claims which have been litigated in a prior action. *Fisher v. State Farm General Ins. Co.*, 1999 MT 308, ¶ 10, 297 Mont. 201, ¶ 10, 991 P.2d 452, ¶ 10 (citation omitted). Four criteria must be met for res judicata to apply. The parties or their privies are the same; the subject matter of the claim is the same; the issues are the same and relate to the same subject matter; and the capacities of the persons are the same in reference to the subject matter and the issues. *Butler v. Colwell,* 1998 MT 241, ¶ 17, 291 Mont. 134, ¶ 17, 967 P.2d 779, ¶ 17 (citation omitted).

¶15 In the present case, R.P. fails to meet even the first criterion for application of the doctrine of res judicata, because the parties or their privies are not the same. In the current abuse and neglect proceeding, the parties are the Department, represented in the District Court by the Gallatin County Attorney and on appeal by the Office of the Attorney General, the children and R.P. The parties to the earlier dissolution proceeding were R.P. and T.P.

¶16 R.P. asserts the Department was a party to the dissolution action because it was investigating claims of abuse within the family at that time. While R.P. is correct that the Department investigated both parents concerning abuse during the dissolution action, it was not a legal party or in privity with a party to that proceeding. Nor did the Department petition for temporary investigative authority and protective services for B.P. and A.P. until after the dissolution action was final. We conclude R.P. has not established the first criterion necessary for application of the doctrine of res judicata. As a result, since all four criteria must be met (*Butler*, ¶ 17), we need not address the remaining criteria.

¶17 We hold the District Court's placement of the children with T.P. is not barred by the doctrine of res judicata.

¶18 2. Did the District Court err in refusing to remove the guardian ad litem?

¶19 R.P. argues the District Court erred in not removing guardian ad litem Brown. According to R.P., Brown continued in her biased behavior subsequent to *In re B.P.* by displaying a personality conflict with the family and offering custody recommendations

adverse to R.P. at the hearing. R.P. also contends Brown was biased because her supervisor is married to T.P.'s attorney.

¶20 As noted above, we addressed this issue previously. In R.P.'s earlier appeal, she contended the District Court erred in not removing Brown because Brown was biased and did not have a good relationship with R.P.'s children. *In re B.P.*, ¶ 40. We concluded R.P. had produced no evidence that Brown was not performing the statutory duties required of a guardian ad litem, and that her allegations were both unsupported in the record and controverted by Brown's testimony about her relationship with the children. *In re B.P.*, ¶ 42. Thus, the only issue presently before us in this regard is whether R.P. presented new evidence pursuant to which the District Court's refusal to remove Brown was erroneous.

¶21 Under § 41-3-303(2), MCA (1997), a guardian ad litem is charged with representing the child's best interests and has the following general duties:

> (a) to conduct investigations that the guardian ad litem considers necessary to ascertain the facts constituting the alleged abuse or neglect;
>
> (b) to interview or observe the child who is the subject of the proceeding;
>
> (c) to have access to court, medical, psychological, law enforcement, social services, and school records pertaining to the child and the child's siblings and parents or custodians;
>
> (d) to make written reports to the court concerning the child's welfare;
>
> (e) to appear and participate in all proceedings to the degree necessary to adequately represent the child and make recommendations to the court concerning the child's welfare;
>
> (f) to perform other duties as directed by the court[.]

¶22 In support of her motion for Brown's removal, R.P. argued to the District Court that Brown had not resided in Bozeman since the summer of 1999 and that, during her term as guardian for the children, A.P. received an injury while in foster care that resulted in a forehead scar and B.P. broke his arm while playing with friends in California. Brown and T.P. opposed the motion for removal, arguing that the children themselves had not resided in Bozeman since July of 1999 and that Brown could not be held responsible for ordinary

childhood mishaps. After considering the record, the District Court denied R.P.'s motion for removal and replacement of Brown.

¶23 On appeal, R.P. asserts her feelings that Brown is biased in favor of T.P. and acknowledges that her objection to Brown is based on a difference of opinion about how the children should be raised. As was the case in her earlier appeal, R.P. advances no evidence that Brown failed to meet her statutory duties or in support of her "feelings." Indeed, R.P.'s assertions that Brown is biased because of her difference of opinion about home-schooling and her testimony that it is not in the children's best interests to place them with R.P. reflect that Brown was merely discharging her duties under § 41-3-303(2), MCA (1997). Furthermore, the record contains no evidence in support of R.P.'s contention that Brown is biased because her supervisor is married to T.P.'s attorney.

¶24 We hold the District Court did not err in refusing to remove the guardian ad litem.

¶25 3. Did the District Court err in denying R.P.'s petition for a writ of habeas corpus?

¶26 R.P. petitioned the court for a writ of habeas corpus demanding the children be physically present for the hearing because they were material witnesses and had been removed from her custody unlawfully. The District Court denied the petition and R.P. asserts error on the grounds that: 1) habeas corpus is an appropriate method for bringing custody matters before the court; and 2) her right to due process was violated when the children were not allowed to testify in person about the alleged abuse.

¶27 R.P. relies on *Application of Bertelson* (1980), 189 Mont. 524, 617 P.2d 121, for the principle that a petition for writ of habeas corpus is a procedural device to bring custody matters before a court. She is correct that *Bertelson* contains that statement. *See Bertelson*, 189 Mont. at 541, 617 P.2d at 131 (citation omitted). The facts in *Bertelson*, however, do not support application of that principle to support her petition in the present case.

¶28 In *Bertelson*, a mother with a valid state court custody order petitioned for habeas corpus seeking the return of her daughter from paternal grandparents residing on the Rocky Boy Indian Reservation who had obtained a subsequent temporary custody order from a tribal court. *Bertelson*,189 Mont. at 528, 617 P.2d at 124. Against such a factual and procedural backdrop, we recognized that habeas could be a procedural device to bring the custody issue before a court. *Bertelson*, 189 Mont. at 541, 617 P.2d at 131.

¶29 In contrast, R.P. attempts to use a petition for writ of habeas corpus to demand that the children who have been removed from her home in an abuse and neglect action be physically produced to testify at those abuse and neglect proceedings and also that custody be returned to her, the alleged abuser. Her purported basis is that, like the mother in *Bertelson*, she had a custody order from her earlier dissolution action. R.P.'s position ignores the substantial differences in custody issues between dissolution proceedings and abuse and neglect proceedings, differences not at issue in *Bertelson*. It also totally ignores our holding in her earlier appeal that the children were properly removed from her home in the present case. *See In re B.P.*, ¶ 38. In other words, we previously have determined that the Department's temporary custody of the children was legal and, as result, habeas relief-- which generally is premised, as in § 46-22-101, MCA, on illegal restraint--simply is not available to R.P. here.

¶30 R.P. also argues that a writ of habeas corpus is necessary to ensure her due process rights, claiming it was a violation of her due process rights not to have the children's testimony available to rebut the allegations against her at the hearing. She argues in this regard that, pursuant to *Armstrong v. Manzo* (1965), 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66, due process requires a meaningful hearing. She also relies on *Greene v. McElroy* (1959), 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377, for the proposition that a parent must be provided a meaningful way to rebut a report submitted to the court in a case of this type.

¶31 We need not rely on *Armstrong* for fundamental due process principles. We have repeatedly held that due process requires "'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *See*, *e.g.*, *Smith v. Board of Horse Racing*, 1998 MT 91, ¶ 11, 288 Mont. 249, ¶ 11, 956 P.2d 752, ¶ 11 (quoting *Connell v. State, Dept. of Social Services* (1997), 280 Mont. 491, 496, 930 P.2d 88, 91; *Small v. McRae* (1982), 200 Mont. 497, 506, 651 P.2d 982, 987). But due process is not a fixed concept. Rather, it is a flexible concept which must be "'tailored to each situation in such a way that it meets the needs and protects the interests of the various parties involved.'" *Smith*, ¶ 11 (quoting *Small*, 200 Mont. at 507, 651 P.2d at 988). Thus, while R.P. must be afforded the opportunity to be heard in a meaningful manner, that opportunity need not be provided at the expense of the children whose best interests are the paramount focus of the abuse and neglect proceeding. Indeed, subjecting the children to direct and cross-examination would not only not serve their best interests, it could exacerbate the abuse the record reflects they have already experienced.

¶32 R.P. further contends that, pursuant to *Greene*, when a report is submitted to the court, there must be a meaningful way for the respondent parent to rebut that report. However, *Greene* is no help to R.P. That case merely states the fundamental principle that a defendant must be able to confront and cross-examine his or her accusers in accordance with "notions of fair procedures." *Greene*, 360 U.S. at 506, 507, 79 S.Ct. at 1419, 3 L. Ed.2d at 1396. *Greene* involved an engineer who was denied a security clearance necessary to perform his work, based on anonymous reports that he was a Communist. *Greene*, 360 U.S. at 475, 484, 79 S.Ct. at 1403, 1407, 3 L.Ed.2d at 1379, 1384. Greene was not able to confront his accusers or even determine in detail what the allegations against him were. *Greene*, 360 U.S. at 479, 79 S.Ct. at 1405, 3 L.Ed.2d at 1382.

¶33 Here, R.P. does not allege the children are her accusers and she has a right to confront them. Nor are there anonymous reports in the record. To the extent "accusers" could be said to exist in this case, they would be the social workers, expert witnesses, and guardian ad litem who presented testimony in support of the Department's modified petition for permanent placement of the children with T.P. and on whose testimony the District Court relied in ordering that placement. R.P. was afforded the opportunity to confront and cross-examine these witnesses. She did so. She also presented her own case. We conclude that R. P.'s due process rights to be heard, and her rights to confront and cross-examine the witnesses against her were met.

¶34 R.P. also argues, apparently in relation to her due process contention, that the District

Court excluded exculpatory evidence and cut off the hearing before she was fully heard. In doing so, however, she presents only factual assertions relating to certain excluded evidence. She advances no analysis or authorities under which the excluded evidence was admissible, or pursuant to which the District Court's evidentiary rulings constituted an abuse of discretion, as required under Rule 23, M.R.App.P. As a result, we decline to address this argument further.

¶35 We hold the District Court did not err in denying R.P.'s petition for a writ of habeas

corpus.

¶36 4. Did the District Court infringe on R.P.'s and her children's constitutional rights of religious freedom and privacy?

¶37 R.P. claims the District Court infringed on her religious rights by restricting her contact with the children and terminating her parental rights. She asserts that her parental right to participate in the religious training of her children through home-schooling and Christian presentation of educational materials is a fundamental liberty interest.

¶38 We examined a nearly identical issue in R.P.'s prior appeal. There, R.P. argued the District Court violated her right to religious freedom by removing the children from her, thus infringing on her fundamental liberty interest in the care and custody of her children by interfering with her ability to direct their religious upbringing. *In re B.P.*, ¶ 48. We concluded the court based its order removing the children from R.P.'s custody on record evidence that the children were being emotionally disturbed and threatened with harm and, moreover, that no evidence of record indicated the District Court was hostile to R.P.'s religious views. *In re B.P.*, ¶ 50. We concluded that R.P. remained free to pursue her personal religious beliefs, and her constitutional right to religious freedom had not been infringed. *In re B.P.*, ¶ 50.

¶39 Here, the District Court made no findings of fact or conclusions of law relating to R.P.'s religious beliefs or her decision to home-school the children. Nor does anything in the record support R.P.'s contentions that the court's order was based on such matters. Furthermore, R.P.'s assertions to the contrary notwithstanding, her parental rights have not been terminated. Contact with her children can be re-established when R.P. addresses her psychological disorders with the ongoing treatment of a psychologist or counselor in conjunction with a licensed psychiatrist. R.P. may have supervised phone calls with the children when a competent counselor agrees that she can have age-appropriate conversations with the children and when she acknowledges her responsibility in emotionally abusing the children. In the meantime, she remains entirely free to practice her personal religious beliefs. ¶40 We hold the District Court did not infringe on R.P.'s constitutional right of religious freedom.

¶41 Finally, R.P. asserts in her issue statement that her right to privacy and the children's religious and privacy rights were violated when the District Court restricted her contact with the children. She advances no authority in support of these positions, however, as required by Rule 23(a)(4), M.R.App.P. Indeed, R.P. does not address these assertions in any way in the text of her briefs. It is not this Court's obligation to locate authorities or formulate arguments for a party in support of positions taken on appeal. *See Johannes v. State Dept. of Natural Resources*, 1998 MT 51, ¶ 24, 288 Mont. 39, ¶ 24, 955 P.2d 653, ¶ 24. Therefore, we decline to address these matters further.

¶42 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART