CHIEF JUSTICE GRAY,
dissenting.
¶141 I join the Court in holding that a cause of action for money damages is available in Montana for violations of the rights to privacy and to be free from unreasonable searches and seizures guaranteed by Article II, Sections 10 and 11 of the Montana Constitution. For the reasons discussed at some length below, I dissent from the Court’s discussion of-and holding on-due process. I also dissent from the Court’s holding that the defendants in this case are not entitled to statutory immunity pursuant to § 2-9-103(1), MCA, and, to that extent, join Justice Rice’s dissent. I also join Justice Leaphart’s thoughtful discussion of the doctrine of quasi-judicial immunity. Finally, because I would hold that the defendants have statutory immunity, I would not address the remaining issues resolved by the Court.
¶142 Regarding due process, the Court begins at ¶ 20 by stating that we “mistakenly omitted remanding [Dorwart’s state constitutional right to due process claim] to the District Court for further consideration” in Dorwart I. As the author of Dorwart I, and notwithstanding the appellants’ one conclusory statement in their opening brief that “the claims that remained at issue [on remand after Dorwart I\ were Dorwart’s claims of violations of the Montana Constitution’s ... right to not have his property taken without due process of law,” the record does not support this proposition.
¶ 143 The record in this case relating to Dorwart’s due process claims begins with the First Amended Complaint. Therein, the plaintiffs began by generally alleging a claim for money damages for violations of constitutional and common law rights, and a claim for declaratory judgment and injunctive relief regarding whether the statutes at issue violated due process under both the federal and state constitutions. The plaintiffs then alleged, inter alia, three due process claims: 1) the Third Cause of Action alleged a violation by the defendants of the right to due process under the Montana Constitution, resulting injury and a request for monetary damages and fees; 2) the Ninth Cause of Action . alleged a violation by the defendants of due process under the United States Constitution, resulting injury, and a request for compensatory and punitive damages; and 3) the Tenth Cause of Action sought declaratory and injunctive relief on due process grounds, alleging irreparable injury in support thereof. The District Court ultimately entered summary judgment for the defendants on all of plaintiffs’ claims-expressly including the Third Cause of Action, the alleged *41 violation by the defendants of the Montana constitutional right to due process-except the plaintiffs’ claim for declaratory judgment and injunction.
¶144 In this latter regard, however, the District Court created some confusion by granting the plaintiffs partial summary judgment on the “ninth cause of action,” expressing its ruling as a determination that the statutes at issue violate “state and federal due process” and enjoining the County from levying writs of execution against plaintiff Russell Edward Dorwart without appropriate notification. In other words, having first determined that the defendants were entitled to summary judgment on all claims except that for declaratory judgment and injunction, it then misstated the plaintiffs’ Ninth Cause of Action as one alleging both federal and state due process violations, determined those violations to exist via the unconstitutional statutes, and granted-as it stated it would-summary judgment to the plaintiffs on their request for injunctive relief, without characterizing it as the plaintiffs’ Tenth Cause of Action.
¶145 The plaintiffs filed a notice of appeal from certain portions of the District Court’s Memorandum and Order, including those portions granting the defendants’-and denying their-motion for summary judgment on their Third Cause of Action (state constitutional due process claim) and Ninth Cause of Action (federal constitutional due process claim). The defendants cross-appealed the District Court’s grant of partial summary judgment to the plaintiffs on their declaratory and injunctive relief claims.
¶146 The plaintiffs’ appellate follow-through, if any, regarding either the Third or Ninth Cause of Action was hardly a model of clarity. In the due process section of their brief on appeal-which exceeded 25 pages in length-they contended in 3Vz pages that due process was violated even if the challenged statutes are constitutional (at best, a murky argument with regard to the Third Cause of Action). In that portion of their brief, the plaintiffs correctly noted that the District Court separated their due process claims in a manner not entirely consistent with the causes of action asserted, contended the separate due process claim that the defendants violated the statutes was “an alternative claim in the event the challenged statutes were found to be constitutional,” and argued that the trial court’s conclusion that their property was not taken in violation of due process was inconsistent with its conclusion that the statutes were unconstitutional. The plaintiffs then specifically stated as follows:
It would appear that, if the statutes are unconstitutional, then Dorwart’s property was taken in violation of due process, and the *42 claim of a due process violation based on violating those same statutes would be moot. In the event this Court does not find those statutes unconstitutional, then Dorwart asserts his due process claim that the statutes were violated.
(Emphasis added.) The remainder of the plaintiffs’ due process arguments during the first appeal consisted of a discussion and analysis captioned Due Process Was Violated Because the Challenged Statutes are Unconstitutional, running more than 20 pages in length, which argued in support of the District Court’s conclusion that the statutes at issue were unconstitutional. Indeed, it ended by enumerating the various reasons the statutes violate due process and concluding that “[t]he district court’s analysis and conclusion on this issue is correct.” In other words, the plaintiffs’ brief regarding due process was largely a pre-emptive strike against the anticipated cross-appeal argument that the trial court had erred in determining that the statutes were unconstitutional.
¶147 We stated the due process issue in Dorwart I as follows: “Did the District Court err in determining that Montana’s post-judgment execution statutes are unconstitutional because they do not provide the procedural due process of law required by Article II, Section 17 of the Montana Constitution and the Fourteenth Amendment to the United States Constitution?” Dorwart I, ¶ 62. In our discussion, we followed both the trial court’s and the plaintiffs’ lead in addressing the constitutionality of the statutes, ultimately concluding that the statutes are unconstitutional because “they do not provide the procedural due process of law required by Article II, Section 17 of the Montana Constitution and the Fourteenth Amendment to the United States Constitution.” See Dorwart I, ¶¶ 63-103. Implicitly agreeing with the plaintiffs’ argument that the due process question with regard to the officers’ alleged violation of the statutes would be moot if we determined the statutes to be unconstitutional, we properly did not address that issue. In retrospect, our opinion could have been more clear. In any event, we held the statutes unconstitutional under the due process provisions of both the federal and state constitutions. Because we properly did not address whether-or conclude that-the officers had violated the statutes, we also properly did not remand for farther consideration of a constitutional claim against the officers. The Court is simply wrong in concluding otherwise.
¶148 Moreover, in advancing its notion that we “mistakenly omitted remanding” on the due process claim against the defendants themselves, the Court fails to take into account both the availability of a Rule 34, M.R.App.P., petition for rehearing and the fact that the *43 plaintiffs availed themselves of the opportunity to file such a petition after our decision in Dorwart I was issued. The first section of that petition argued that we had erroneously stated that they did not request monetary damages as part of their federal due process violation and tied the request for monetary damages for the federal due process violation to the issue of the defendants’ entitlement to qualified immunity. It ended with the statement that “Dorwart’s due process rights were clearly established and Ames and Caraway should not be entitled to qualified immunity.” Nothing in that portion of the plaintiffs’ petition for rehearing requested any change in the extent of our remand to the District Court on the due process issue.
¶149 The second section of the petition for rehearing did, however, request that the state law due process constitutional claim-that is, the plaintiffs’ Third Cause of Action-be remanded to the District Court. After objections to the petition by the defendants, and responses amici curiae, we issued our order on November 12, 1998, withdrawing the original ¶ 103 from our August 4,1998, Opinion, and replacing it with the ¶ 103 which now is part of the opinion in Dorwart I and which is discussed above. We denied the plaintiffs’ petition for rehearing in all other respects, including the requested remand on the Third Cause of Action. Three of the members of our current Court, including myself, signed the order. Two others, including the author of the Court’s opinion in this second appeal, noted on our order that they would deny the petition for rehearing outright. My point here, of course, is that the plaintiffs requested a remand of their state constitutional due process claim in their petition for rehearing in Dorwart I, and all members of the Court denied that request. In light of this record, it is beyond imagining how the Court can now state that we mistakenly omitted such a remand in the earlier appeal.
¶150 The record and logic aside, the law of the case doctrine clearly prohibits the Court’s remand of the state constitutional due process claim at this point. Under that doctrine, an earlier decision by this Court resolving a particular issue between the same parties in the same case is binding and cannot be relitigated. Calcaterra v. Montana Resources, 2001 MT 193, ¶ 10, 306 Mont. 249, ¶ 10, 32 P.3d 764, ¶ 10 (citation omitted). We addressed the due process issues between these parties in Dorwart I, and even expressly rejected the remand now determined to be appropriate by the Court. Quite clearly, the purpose of the law of the case doctrine-“to promote judicial economy and prevent the never-ending litigation of a single case”-and its long jurisprudential basis in Montana (see Calcaterra, ¶ 10) are no longer of interest to the Court. I would apply the doctrine and be done with *44 the due process issues in this case which began more than 10 years ago.
¶151 Justice Nelson gamely attempts to defend the Court’s failure to apply the law of the case doctrine here, but the defense falls far short. He quotes at length from Zimmerman in support of an exception to application of the doctrine where the court is correcting a “manifest error” in its former opinion. Justice Nelson then fails to apply the Zimmerman rationale to the present case.
¶152 As discussed at length above, there was no manifest error in our failure to remand on the plaintiffs’ Third Cause of Action. Nor does the Court address the issue as correcting a manifest error. Indeed, the Court merely “decides”-some four years later-that we mistakenly failed to remand on the Article II, Section 17 claim.
¶153 Similarly, Justice Nelson’s point that the law of the case doctrine is limited to issues actually decided is generally correct, but also of little help here. As discussed above, the plaintiffs asserted during the first appeal that the state constitutional due process cause of action would be moot if we upheld the District Court’s conclusion that the statutes themselves were unconstitutional. We upheld that conclusion; to say that we “ignored” the issue is wholly inappropriate in light of the procedural and decisional record in this case and, moreover, it allows the plaintiffs to entirely change their argument on the point during this second appeal. In addition, of course, we denied the plaintiffs’ petition for rehearing which sought precisely the remand the Court has now decided was “mistakenly” omitted in Dorwart I. Thus, the issue of a remand regarding the Third Cause of Action has been “actually decided” and cannot properly be revisited now.
¶154 Finally, the Court also specifically concludes that “a direct cause of action for money damages is available for violation of the Plaintiffs’ rights guaranteed by Article II, Section 17 of the Montana ConstitutionThe Court is again in error, for several reasons.
¶155 First, as discussed above, the due process issues in this case were resolved in Dorwart I on the District Court’s conclusion that the statutes at issue were unconstitutional, this Court’s affirmance of that conclusion and our denial of the request for remand in the plaintiffs’ petition for rehearing. Second, the Court’s conclusion that “a direct cause of action for money damages is available for violation of the Plaintiffs’ rights guaranteed by Article II, Section 17 of the Montana Constitution” is not supported by the “self-executing” analysis it applies to the rights of privacy and to be free from unreasonable searches and seizures under the Montana Constitution. In other words, the Court has improperly-and only very indirectly-applied that *45 analysis to the due process claim.
¶156 Let me be clear: I agree with the Shields I Bivens analysis the Court applies to the issue of the existence of a constitutional cause of action for violations of certain constitutional rights. It is my view, however, that that analysis does not support a constitutional cause of action for a due process violation in the present case.
¶157 The only case to which the Court cites with regard to the ability to recover money damages for violations of the constitutional guarantee of due process-albeit under the Fifth Amendment-is the United States Supreme Court’s decision in Davis v. Passman. Davis, however, was not a “pure” due process case under the “nor be deprived of life, liberty, or property, without due process of law” language of the U. S. Constitution, which is nearly identical to that in Article II, Section 17 of the Montana Constitution. Rather, Davis involved a gender-based discrimination claim brought pursuant to the Fifth Amendment’s right to due process by a Congressional staffer against the legislator for whom she had worked. The Supreme Court relied on its cases interpreting the Due Process Clause as including an equal protection component, and allowed the cause of action to proceed. Davis, 442 U.S. at 234, 99 S.Ct. at 2271. Thus, Davis is not at all analogous to the present case, and does not support the Court’s conclusion here.
¶158 Moreover, the Court’s reliance on Shields is more notable for what it does not disclose about that case than for what it does. I agree entirely with the Court’s statement that Shields “held that a general provision guaranteeing a right to enjoy life was not self-executing but that the specific guarantee of a right to free speech was self-executing.” (Emphasis added.) The statement itself clearly invites the question of what distinguishes a self-executing from a non-self-executing constitutional provision, a question the Court ignores but Shields addresses.
¶159 The Shields court begins by quoting as follows from the United States Supreme Court decision in Davis v. Burke, a case relied on by most jurisdictions in determining whether a state constitutional provision is self-executing:
A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, ... and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law ....
... In short, if complete in itself, it executes itself.
Shields, 658 A.2d at 928 (quoting Davis v. Burke, 179 U.S. at 403, 21 *46 S.Ct. at 212 (citations omitted)). The Shields court went on to state that
[determining whether a provision supplies a sufficient rule entails application of certain relevant criteria, no one of which is dispositive. First, a self-executing provision should do more than express only general principles; it may describe the right in detail, including the means for its enjoyment and protection.
Shields, 658 A.2d at 928. The court then proceeded to apply those, and other, principles in determining that the Vermont constitutional provision guaranteeing a right to enjoy life is not, as the Court properly observes in the present case, self-executing, but that the constitutional right to freedom of speech is self-executing. Shields, 658 A.2d at 928-30.
¶ 160 The Court performs no Shields analysis here with regard to the constitutional due process cause of action, and I submit that such an analysis would produce a result opposite from that the Court reaches. In other words, the Article II, Section 17 due process right clearly is not self-executing for pro-poses of supporting a constitutional cause of action for money damages.
¶161 Moreover, our cases standing for the proposition that due process is a flexible concept which should be tailored to the circumstances of each case are legion. See, e.g., State v. Hagen, 2002 MT 190, ¶ 13, 311 Mont. 117, ¶ 13, 53 P.3d 885, ¶ 13; In re B.P., 2001 MT 219, ¶ 31, 306 Mont. 430, ¶ 31, 35 P.3d 291, ¶ 31; McDermott v. McDonald, 2001 MT 89, ¶ 10, 305 Mont. 166, ¶ 10, 24 P.3d 200, ¶ 10; Pickens v. Shelton-Thompson, 2000 MT 131, ¶ 15, 300 Mont. 16, ¶ 15, 3 P.3d 603, ¶ 15; Jellison v. Mahoney, 1999 MT 217, ¶ 8, 295 Mont. 540, ¶ 8, 986 P.2d 1089, ¶ 8; Smith v. Board of Horse Racing, 1998 MT 91, ¶ 11, 288 Mont. 249, ¶ 11, 956 P.2d 752, ¶ 11. In light of both Shields and our cases, it is inconceivable to me that a private constitutional due process cause of action can exist which, among other things, would improperly permit a jury to determine the constitutional and ever-flexible question of what process is due.
¶162 I understand the Court’s desire to breathe life into the provisions of the Montana Constitution. Where that desire properly can be pursued under the law, I support it. For all the reasons stated herein, I cannot support any portion of the Court’s analysis of the due process issue. I dissent.